## JOHN C. YATES *et al.*

*v.*

## ALICE M. DODGE, EXR'X.

*Filed at Ottawa November 11, 1887.*

1. ATTACHMENT—*fraud that will authorize an attachment—obtaining money from one who had resigned a guardianship on the pretense of having qualified as his successor.* A, on the settlement of his account and his resignation as guardian, and the naming of B as his successor, promised the latter to pay over the fund in his hands when B should give bond and qualify. Shortly afterward B went to A and told him that he had filed his bond and qualified, and, at the same time, presented a paper on which was written B's appointment, signed by the county judge, and a receipt running to "A, former guardian of," etc., for $1941, belonging to A's wards, and signed by B as "succeeding guardian," on the faith of which A paid him the sum named in the receipt. The representation of B that he had qualified, proved false, and A was compelled to pay the amount found in his hands, to the rightful guardian: *Held*, that the receipt given by B to A, taken in connection with the order of the court, and considered in the light of the circumstances, was such a statement in writing as constituted a fraud, within the meaning of the ninth clause of section 1 of the Attachment act, and authorized an attachment against the property of B.

2. INSOLVENT DEBTOR'S ACT—*priority of right as between an attaching creditor and an assignee of the debtor.* A writ of attachment was levied on real estate on November 6, 1885, at twenty minutes after ten o'clock A. M., and a deed of assignment for the benefit of creditors, made by the attachment debtor, was filed in the county clerk's office some three hours later, but not in the recorder's office until May 4, 1886. There was no proof that the attaching creditor, at the time of the levy, had any notice of the assignment, and the assignee had not then taken possession: *Held*, that the attachment took precedence over the deed of assignment, and that the assignee took the real estate subject to the lien of the attachment.

3. An assignee to whom property is transferred by a debtor for the payment of his debts, takes it subject to all liens to which it is then liable.

4. SAME—*waiver of attachment lien, by proving claim under the assignment.* A creditor of an insolvent debtor who has made a voluntary assignment for the benefit of creditors, by proving his debt against the estate, will not waive or lose his lien on the assigned property acquired by the levy of an attachment before notice of the assignment.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. M. GREEN, Judge, presiding.

Messrs. STEVENS, LEE & HORTON, for the appellant:

The paragraph of the Attachment law refers to some paper that is an inducement to a person to part with his money or other valuable thing, which can not be said of a receipt, which does not precede, but follows, the payment of money. It can not be that any receipt for the payment of money furnishes ground for an attachment, no matter what verbal representations are made.

The court has no right to consider the oral declarations of Yates, or the order of the county court, as affecting the right of attachment.

An attachment being wholly statutory, the proceedings must conform strictly with the statute, and the courts have no right, by judicial construction, to enlarge the provisions of the act. *Haywood* v. *Collins,* 60 Ill. 328; *Railroad Co.* v. *Crane,* 102 id. 249.

The deed of assignment took effect from the time of its delivery to the assignee, which was the day before the attachment issued. *Myers* v. *Fales' Sons & Co.* 12 Bradw. 351.

Messrs. PUTERBAUGH & PUTERBAUGH, for the appellee:

The instrument signed by Yates is not simply a receipt for money, but for something more. It was, in substance and effect, a statement that Dodge was no longer guardian of the wards. It termed him the "former guardian," and it amounted to a positive representation that he (Yates) was the legally appointed guardian.

The statute being intended to prevent fraud, is to be liberally construed, as the act itself declares. *Railroad Co.* v. *Crane,* 102 Ill. 249; *Insurance Co.* v. *Warner,* 28 id. 429.

The statute, in cases of voluntary assignments, does not require the deed of assignment to be filed for record before it

takes effect. In regard to real estate, the rule is different. *Myers v. Fales' Sons & Co.* 12 Bradw. 351; Rev. Stat. chap. 30, sec. 31.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This action was originally begun in the circuit court of Peoria county by William M. Dodge, whose death was suggested in the Appellate Court, and Alice M. Dodge, his executrix, was substituted as appellee. The suit was commenced by attachment.

On November 6, 1885, William M. Dodge filed his affidavit for a writ of attachment, alleging that Yates was indebted to him in the sum of $1900, and "that the said John C. Yates fraudulently represented himself, in writing, to be the legal guardian of Jennie Watrous and Ada Watrous, minor heirs of Samuel Watrous, deceased, and thereby procured the said William Dodge to pay to him the said sum of $1900." On December 28, 1885, Yates filed a plea in abatement to the writ, alleging "that he did not fraudulently represent himself in writing to be the legal guardian of Jennie Watrous and Ada Watrous, minor heirs," etc. Plaintiff joined issue upon this plea, and the first question in the case arises upon the issue so formed.

The ground for the attachment, as set forth in the affidavit, is based upon the ninth paragraph of section 1 of the Attachment act, which reads as follows:

"*Ninth*—Where the debt sued for was fraudulently contracted on the part of the debtor: *Provided*, the statements of the debtor, his agent or attorney, which constitute the fraud; shall have been reduced to writing, and his signature attached thereto by himself, agent or attorney." Hurd's Rev. Stat. 1885, chap. 11, p. 152.

Dodge had been appointed guardian of the Watrous heirs on January 30, 1882, by Yates, who was then county judge. While he was acting as guardian on January 25, 1884, he

loaned $2900, belonging to his wards, to Yates, taking the latter's note therefor due in one year, and receiving as collateral security for the payment of the note some stock in the Merchants' National Bank of Peoria. Dodge continued to act as guardian up to July 22, 1885, at which time he made a report to the county court, of which the Hon. Lawrence W. James was then the judge, showing that he had in his hands $1941.41 belonging to his wards and at the same time tendering his resignation as guardian. At the time on July 22, 1885, when Dodge so made his report and tendered his resignation, Yates was present with him before the county judge, who then verbally designated Yates as Dodge's successor in the guardianship. A conversation then took place, in which Dodge promised to turn over to Yates the money in his hands, or rather the note and collaterals securing it, as soon as Yates should file his bond, as successor in the guardianship. Dodge was at this time over seventy-five years of age and resigned the guardianship on account of his age and infirmities.

On August 7, 1885, Yates went to the office of Dodge and told him, that he had filed his bond and qualified as guardian. He at the same time presented to Dodge the following order and receipt:

"COUNTY COURT OF PEORIA COUNTY.

"*In the matter of Guardian of Jennie Watrous et al.:*

"This day this cause coming on to be heard on the resignation of William M. Dodge, guardian of Jennie and Ida Watrous, and the court, having heard the evidence in the premises, doth order, adjudge and decree that the resignation of William M. Dodge be and the same is hereby accepted, and John C. Yates be appointed guardian of said wards, and that William M. Dodge be discharged as said guardian.

*August 7, 1885.* LAWRENCE W. JAMES, *Judge.*"

Indorsed on the back:

"Filed August 7, 1885.—J. E. PILLSBURY, *Clerk.*"

"PEORIA, *August 7, 1885.*

"Received of William M. Dodge, former guardian of Jennie and Ida E. Watrous, the sum of nineteen hundred and forty-one $\frac{41}{100}$ dollars, ($1941.41,) in full of amount due said wards, as per report filed in county court, Peoria Co., Ill., August 7.

JOHN C. YATES, *Succeeding Guardian.*"

Thereupon Dodge surrendered to Yates the bank stock amounting to $3000, which he held as collateral security, and the note, upon which Yates had paid about $928.80, leaving the amount named in the receipt as the balance then due upon the note.

As matter of fact, when the note and collaterals were so surrendered to Yates, he had not filed his bond as guardian, nor qualified as such, and no letters of guardianship had been issued to him nor were they ever afterwards issued to him. Dodge subsequently paid over the money belonging to his wards to Nicholas Ulrich, who, rather than Yates, was finally appointed guardian. Soon after this suit was begun Yates absconded and fled to Canada.

It is clearly shown, that Dodge was imposed upon and induced by the fraudulent representations of Yates to part with the money of his wards, or with the note and collaterals, which stood in the place of money. It is not denied that Yates owed Dodge the amount claimed in the attachment affidavit, nor is it objected that judgment was not properly entered against Yates by the circuit court for $1923.84.

It is, however, insisted that the circuit court improperly found the issue upon the attachment affidavit in favor of the plaintiff, and that the Appellate Court has erred in affirming such finding of the circuit court.

It is claimed on the part of the appellants, that the order and receipt above set forth do not constitute such a fraudulent statement or representation in writing, as is contemplated by paragraph 9 of section 1 of the Attachment act.

The receipt, prepared by Yates and presented to Dodge, in the body of it describes Dodge as the *"former guardian of Jennie and Ida E. Watrous,"* and in the signature Yates describes himself as *"succeeding guardian."* These expressions in the receipt amounted to statements in writing that Dodge's guardianship had ended, and that the appointment of Yates as successor in the guardianship was complete and in accordance with all the requirements of the law. By the use of the words "former guardian," under all the circumstances of the case, the impression was conveyed to Dodge's mind, that he was not the then *present* guardian, and that everything necessary to terminate his responsibility as guardian under the law had been done except the mere delivery over of the money in his hands to his legal successor. By the use of the words, "succeeding guardian," Yates conveyed and intended to convey to Dodge's mind the impression, that he, Yates, had done everything that was necessary to make himself the legal successor in the guardianship, including the filing of the bond and the issuance of letters.

Dodge had told Yates on July 22, that he would pay him the money as soon as Yates should file his bond. On August 7, Yates told Dodge that he had filed his bond as guardian, and, to strengthen and confirm his statement, produced the written receipt and the original order which he had taken from the files of the county court. Inasmuch as he had not filed his bond as guardian and no letters of guardianship had been issued to him, we are of the opinion that the receipt, taken in connection with the order and considered in the light of all the circumstances, was such a statement in writing as constituted the fraud contemplated by paragraph 9 above quoted. There was, therefore, no error in finding the issue, made by the plea in abatement to the attachment affidavit, in favor of the plaintiff below.

The attachment writ, issued on November 6, 1885, was on the same day levied by the sheriff on certain real estate be-

longing to Yates.   On the second trial below, the defendants offered in evidence a deed of assignment, dated November 5, 1885, from Yates to Seth W. Freeman, which was objected to by the plaintiff, on the ground that it was immaterial.   The trial court sustained the objection.

Before the second trial, Freeman, the assignee, interpleaded, claiming the real estate by virtue of the deed of assignment to himself.

The levy of the attachment was made on November 6, 1885, at twenty minutes after ten o'clock in the forenoon.   The deed of assignment was filed for record more than three hours later, to-wit: at fifty-two minutes after one o'clock in the afternoon of November 6, 1885, in the office of the county clerk of Peoria county.   The deed of assignment was not filed in the recorder's office of said county until May 4, 1886.

There is no proof that Dodge, the attaching creditor, at the time of the levy of his attachment upon the real estate in question, had any notice, actual or constructive, of the assignment. The assignee was not in possession of the property at that time.

Under the state of facts thus recited, we think that the title to the real estate passed to the assignee subject to the lien of the attachment.   The rule of law is well settled that an assignee, to whom property is transferred for the payment of the assignor's debts, takes it subject to all liens, to which it is then liable.   *O'Hara* v. *Jones,* 46 Ill. 288.

It makes no difference that Dodge filed his claim with the assignee.   Whatever dividend he might receive from the general assets of the estate in the hands of the assignee would be applied towards the reduction of his claim, and whatever surplus might remain, after applying to the claim as thus reduced the proceeds of the sale of the real estate under the judgment in the attachment proceeding, would belong to the assignee to be used for the benefit of the other creditors.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*