## Commercial National Bank of Peoria, German American National Bank of Peoria, Central National Bank of Peoria v. First National Bank of Peoria, John D. McClure, Assignee, et al.

1. ASSIGNMENTS FOR THE BENEFIT OF CREDITORS—*Dividends—Secured Claims.*—In the distribution of assets where there are creditors having a priority over others, it is error to order that " in making such distribution each creditor shall be entitled to receive a dividend upon the total amount of his claim, as the same was proven and reported by the assignee, independent of any priorities, and also including in the total of such claims such interest as he may, by law, be entitled to receive."

2. SAME—*Rule for Allowing Dividends.*—In such cases while the dividend is to be allowed on the entire amount of the secured claim as proven, such dividend and the amount realized from the security is not to exceed the amount of the debt. This principle is applicable in the distribution of *pro rata* dividends upon claims filed and proven in the Probate Court against the estates of deceased insolvents, and is subject to the condition that the whole amount of the creditor's claim is due when he files and proves it.

3. SAME—*Effect of Realizing on Security.*—If the creditor realizes on his security before he files and proves his claim, he voluntarily parts with the double right secured to him by law, and can only proceed for the balance due.

4. SAME—*When Property Covered by Security Becomes a Part of the Assets.*—The property covered by security does not become a part of the assets of an estate, until the creditor's lien upon it is extinguished and can not be made to benefit the other creditors until the claim of the creditors having a lien upon it is paid in full.

5. SAME—*Effect of Realizing a Portion of the Claim from the Security.*—If a creditor, after filing a secured claim, realizes a portion of it from the security, before its allowance, his original claim will not be reduced by that fact, so that a dividend can not be declared on the original amount of his claim.

6. SAME—*Chattel Mortgages—When Not a Part of.*—Where a corporation made an assignment on July 27th, it was held that chattel mortgages executed on the 9th of June and 21st of July prior thereto, for the purpose of securing *bona fide* creditors, and without any intention of going into insolvency, are not a part of the assignment.

7. CORPORATIONS—*Rights, When Insolvent, to Secure Creditors.*—The mere insolvency of a corporation can not have the effect of depriving creditors of their legal remedies. They are at liberty, notwithstanding

such insolvency, to sue the corporation and establish a specific lien upon the property, by attachment or execution, if done before a court of equity obtains jurisdiction.

8. INSOLVENT DEBTORS—*Power to Secure Creditors.*—Notwithstanding the voluntary assignment act, a debtor, though insolvent, may still secure by mortgage, confession of judgment or otherwise, a *bona fide* indebtedness, if done in good faith, and not in contemplation of making an assignment under said act.

**Memorandum.**—Assignment for the benefit of creditors. Appeal from an order of the County Court of Peoria County, directing the distribution of the assets of the Transcript Publishing Co.; the Hon. SAMUEL D. WEAD, Judge, presiding. Heard in this court at the December term, 1893. Reversed and remanded. Opinion filed May 22, 1894.

The opinion states the case.

APPELLANTS' BRIEF, JACK & TICHENOR, ATTORNEYS.

Appellants contended that the doctrine of this court, a   id down in Field v. Ridgley, 116 Ill. 424; Jack v. Wiennett  15 Ill. 105; In re Bates, 118 Ill. 424; Mechanics', etc., C / v. American Exch. Nat'l Bank, 27 Ill. App. 154, and other cases of like character is: " Where the assignment is of property incumbered by a mortgage or other lien, the assignee, who takes as a volunteer, takes subject to the lien; he takes merely the equity of redemption, and has no control over the lienholder." But the creditors' rights are also limited in the same case. As lienholders, they have no rights in the property after their lien has been discharged by the payment of the debt secured. The surplus belongs to the assignee for the benefit of the general creditors; otherwise, their rights in property assigned would be superior to their rights as they existed when the assignment was made. If the entire debt is secured no redemption can be made, and the assignee takes nothing for the general creditors until he has paid off and discharged in full the incumbrance. The debt being fully paid, no dividend can be allowed though the creditor may have proven it against the estate. If a portion of the debt is secured, the assignee will be permitted to pay the amount of the lien only, and when it has been fully paid it has been reduced *pro tanto,* and no

dividend can be allowed on the portion thus fully paid and discharged. The rule is well settled that the party holding collateral security for an indebtedness which has been redeemed, or which he has sold, is bound to apply the proceeds to that particular indebtedness, and if sufficient is realized therefrom, that indebtedness is extinguished. He can apply no portion of the security to other indebtedness. Jones on Pledges, Sec. 356, 540–545; Baldwin v. Bradley, 69 Ill. 32; Adams v. Sturgiss, 55 Ill. 468.

ARTHUR KEITHLEY, attorney for First National Bank, and H. C. FULLER, for the Cliff Paper Co. and Watertown Paper Co., appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

The Transcript Publishing Company, of Peoria, on July 27, 1892, made a general assignment to J. D. McClure under statute for the benefit of creditors, all parties thereto being scheduled as creditors. Some time prior to the assignment it executed to Arthur Keithley its note secured by chattel mortgage on its plant for the sum of $5,000, the mortgage having the usual provision of taking possession upon the contingency of the mortgagee feeling unsafe and insecure. The note secured by the mortgage was, by Keithley, indorsed to the appellee, the First National Bank, and it seems that it was taken and given as security. On the 21st day of June of the same year the Transcript Publishing Company gave a second chattel mortgage, upon substantially the same property, to secure additional indebtedness to different creditors, among whom were several of the appellants herein, and securing additional notes held by the First National Bank aggregating $5,464.41. Prior to the assignment the First National Bank caused possession to be taken of the property under the second mortgage, and caused it to be advertised for sale subject to the lien under the first mortgage. After the assignment the secured creditors signed a stipulation that the possession should be surrendered to the assignee, subject to all the rights of the mortgagees as to the debts secured and the costs made while in

their possession. The stipulation was afterward entered into by the secured creditors, that as between themselves and the First National Bank, the latter was entitled to be first paid the amount due it, which was secured by the first mortgage, and the creditors secured by the second mortgage should share *pro rata* from the proceeds of the sale of the plant. The property was subsequently sold by the assignee under the order of the County Court with the provision in the order that the purchase money realized from the sale of the mortgaged property should take the place of the assets sold, subject to the proper order of distribution.

Proofs of claim were duly filed by all creditors secured and unsecured. The First National Bank attached to its proof an itemized statement, making its claim to consist of eight different items; the first being for $5,000, represented by the Keithley note, secured by the mortgage of June 9th, and amounting, with interest, to $5,068.05; the second, a note for $5,000, dated April 14, 1892, secured by the mortgage of June 21, 1892, on which was then due $5,121.23; the third and fourth, two other notes for small amounts, aggregating with interest $468.25, also secured by the mortgage of June 21st; and the balance of the items consisting of expenses incurred in the foreclosure of the chattel mortgage, before the assignee took possession.

The assignee reported the claim of the First National Bank in the aggregate $10,859.72; those of appellants herein which were secured by the second mortgage, being reported at $6,925, $1,597 and $3,121.

On January 12, 1893, the First National Bank filed its petition for the priority of its claim to be paid out of the funds realized from the sale of the transcript plant, and a similar petition was filed on the same day by appellants.

The court upon hearing found that the property covered by the two mortgages sold for a net amount of $8,323.75, which he apportioned among the creditors secured by the mortgages as follows: "To the First National Bank, under the so-called Keithley mortgage, the principal and interest to date on the indebtedness thereby secured, and also the amount shown to have been paid by the bank to the custo-

dian, and for other expenses while in possession under said mortgage," aggregating $5,339.10; the remainder of this fund was then to be distributed *pro rata* among the creditors secured by the second mortgage. This exhausted the mortgage fund. This left for distribution to the general creditors, realized from outside property, $6,334.92, to be distributed *pro rata* among all the creditors whose claims were proven, which distribution the court directed to be made in the manner following: "In making such distribution each creditor shall be entitled to receive a dividend upon the total amount of his claim, as the same was proven and reported by the assignee herein, independent of any priorities, and also including in the total of such claims such interest as he may by law be entitled to receive."

It is this last quoted portion of the order of court as construed by the assignee and afterward affirmed by the court that the appellants assign for error. The appellants object to the appellee, the First National Bank, receiving a dividend out of the unsecured claims on its first secured mortgage out of the funds realized from outside property. It is insisted that the First National Bank should have taken its pay out of the secured property as it had the prior lien. Counsel for appellant admit the binding force of the decision of the Supreme Court in Re Bates, 118 Ill. 524, same case, 19 Brad. 470. A distinction is drawn between that case and the present one, in that the appellee, the First National Bank, had a prior lien on mortgaged property sufficient to pay off in full its first secured claim of $5,339.10, whereas in the Bates case the secured claim was only partially secured.

The Bates case, no doubt, was correctly decided; but in that case, after applying the money arising from a sale of the secured property, and also the general dividend on the whole amount of the secured claim, there remained a balance unpaid; therefore, the creditor holding the secured claim only enjoyed the benefit of his diligence in having obtained his security.

In deciding that case the Supreme Court makes this observation, to wit: "It is true the appellee had the deed of

trust securing his debt, but such deed had never been foreclosed, and no part of the debt had been paid out of the security." The fact of payment is the controlling one. Until the security is realized upon, the debt remains unpaid and the secured creditor can claim his equal dividend, and, after receiving it, can then realize on his security and apply the money arising therefrom to the discharge of the balance of his claim. But, in case there remains a surplus after receiving such money and after satisfying his claim in full, it would appear unjust and unequal to allow him to retain such surplus to apply on other claims.

If he had but the one claim, to allow him to do so would be to allow him to collect more than his entire claim.

In Yates v. Dodge, 123 Ill. 50, in speaking on a similar question, the Supreme Court says : " Whatever dividend he might receive from the general assets in the hands of the assignee would be applied to the reduction of his claim, and whatever surplus might remain after applying it to the claim as thus reduced, the proceeds of the real estate under the judgment in the attachment proceedings would belong to the assignee to be used for the benefit of the other creditors." So, in this case, if the First National Bank held no other claims and there were no others secondarily secured on the same property, it could make no difference to the other creditors on what theory it proceeded, whether it took a dividend out of the assets unsecured and received its balance out of the secured, and turned the remainder into the general fund, or whether it secured its entire claim out of the fund held by it as security in full satisfaction in the first instance.

For the exact amount it would gain by first receiving a general dividend, it would supply to the general fund as surplus, in this case, equal to the general dividend received. But, in cases where such surplus is not equal to the general dividend, or none at all, a secured creditor would gain a legitimate advantage and one allowed by law. In this case, the fund secured by the different chattel mortgages was $8,323.75. Out of this the appellee bank received its first secured claim, amounting to $5,339.10,

leaving a balance to apply on the second chattel mortgage of $2,984.65. The second mortgage claims, being $21,117.59, would receive a dividend out of such fund of 14⅛ per cent, as found by the court below.

The net proceeds from assets arising outside of the chattel mortgage property was $6,334.92, the amount of the dividend yielding slightly more. The entire creditors of the insolvent had claims aggregating $35,445.69, including the $21,117.59, of which were secured in full the claim of appellee, the First National Bank, of $5,339.10, by a first mortgage, and the balance by second mortgage, of which the First National Bank held $5,111.40 secured in part, leaving between $14,000 to $15,000 unsecured.

After ordering paid a dividend of 18 per cent on all claims without distinction out of the unmortgaged assets, the dividend of 14⅛ per cent was allowed to second mortgagees out of the assets secured by the first and secured mortgagees remaining after the payment of the first mortgage. Thus the First National Bank received an over dividend of $961.03 on its claim first secured and ordered paid by the court in full out of the mortgaged property.

This was error. This surplus should have been turned in for the benefit of the second mortgagees' claims, increasing their dividend of 14⅛ per cent up to that amount; this on the theory that appellee, the First National Bank, should choose to exercise its option to regard the mortgaged debt unpaid out of the security it held until a dividend out of the fund arising from the assets unmortgaged had been declared, but in case he chose to accept payment before the declaration of such dividend, then the claim of said appellee secured by the first mortgage would be entitled to no dividend out of the unmortgaged assets, thus leaving the $961.03 remaining to swell such last named assets, and the dividend arising therefrom, and the second mortgagees could not complain.

In cases like this, while the dividend should be allowed on the entire amount of the secured claim as proven, such dividend and the amount realized from the security held subject to such claim, should not exceed the amount of the debt, and this principle is applicable in the distribution of *pro rata*

dividends upon claims filed and proven in the Probate Court against the estates of deceased insolvents. This right is subject to the conditions that the whole amount of the creditor's claim is due when he files and proves it.

If he realizes on his security before he files and proves his claim he voluntarily parts with the double right secured to him by law, and can only proceed for the balance due. The property covered by the security does not become a part of the assets of the estate until the creditor's lien upon it is extinguished, and can not be made to benefit the other creditors until the claim of the creditors having a lien upon it is paid in full. But the debt can not in any event be overpaid. If a creditor, after filing his secured claim and having it tried, realizes a portion of it from his security before decision and allowance, his original claim will not be reduced by that fact, so that a dividend can not be declared on the original amount of his claim. This rule is adoped by the Supreme Court to remove the temptation to prolong the litigation in order that such creditor may be forced to realize a portion of his claim from the security and thereby reduce the allowance. By such a course of proceeding the secured creditor might be deprived of his rights under the law, to proceed both against the assets and security until he gets payment in full.

The above principles are announced in a late opinion of the Supreme Court. Ferness v. Union National Bank, filed at Ottawa, October 3, 1893. The court below, therefore, committed an error in allowing full payment to the First National Bank out of the proceeds realized from the secured property, and at the same time a dividend on such claim after its full payment.

The Cliff Paper Co. and the Watertown Paper Co., unsecured creditors, come into court and assign cross-errors, and present several points of law for the consideration of this court.

First, it is insisted that the execution of the various chattel mortgages was of such a contemporaneous character as that they should be regarded as a part and parcel of the final act of assignment.

We do not think that the evidence justifies such a con-
clusion. The first chattel mortgage was executed on June
9, 1892, and the second on July 21, 1892, and the resolution
of the insolvent company by its board of directors author-
izing an assignment, was passed July 27, 1892. The first
chattel mortgage given to Keithley as agent for the First
National Bank was in part for the borrowed money advanced
to the company at the time of the execution. The other
mortgage was given on the demand of the mortgagees for
security and apparently without any intention at the time,
of going into insolvency. It was more than a month before
the final determination of the Transcript Publishing Com-
pany was formed, by its resolution, of making the assign-
ment.

The circumstances would not warrant the different acts to
be regarded as contemporaneous and as an act of assignment.
It bears little resemblance to the case of Sweet, Dempster
& Co. v. Scherber, 42 App. 274, decided by this court and
cited in the brief by the attorneys urging the cross-errors
assigned herein.

The second point made is that an insolvent corporation can
not execute a valid chattel mortgage to secure a portion of
its creditors, and the cases of Beach v. Miller, 130 Ill. 162, and
Roseboom v. Whittaker, 132 Ill. 81, are cited. Upon an
examination of those cases it will be seen they support no
such proposition. Each of them holds only that a director
of an insolvent corporation may not deal with the corpora-
tion so as to secure a preference for a debt due himself over
other creditors, or purchase the assets of the same in satis-
faction of a debt of his own to the exclusion of other cred-
itors.

" The mere insolvency of a corporation can not have the
effect of depriving creditors of their legal remedies, but they
are at liberty notwithstanding the insolvency, to sue the
corporation in an action of law, and by means of such pro-
ceeding establish a specific lien upon the property seized by
attachment or execution," if done before a court of equity
obtains jurisdiction, says the Supreme Court in Roseboom
v. Whittaker, *supra.*

Commercial Nat. Bk. v. First Nat. Bk.

In Hartford Oil Co. et al. v. The First National Bank, 126 Ill. 584, the Supreme Court says, that "notwithstanding the voluntary assignment act, a debtor, though insolvent, may still secure by mortgage or confession of judgment or otherwise a *bona fide* indebtedness, if done in good faith and not in contemplation of making an assignment under said act." The same language is cited and approved in Burch v. West et al., 132 Ill. 253.

The claim of the First National Bank first secured, was in consideration of one-half the note, $2,500 cash paid, and the balance represented a prior debt due the bank from the insolvent company. At this time the evidence fails to show the company had any intention of making an assignment, or that the bank knew it was insolvent at the time or would make an assignment.

Counsel for the Cliff Paper Company and the Watertown Paper Company, unsecured creditors, in urging the sustaining of his cross-errors, insists the second chattel mortgage is void because Stone was indorser on several of the notes therein named, and being secretary, general manager and director of the insolvent company, could not legally execute such mortgage.

We do not think parties assigning cross-errors are in a position to raise such an objection, even if such objection were tenable, which we need not decide. Upon examination of the record we find that Stone was only indorser on three of the notes secured in the second mortgage, one to the Commercial National Bank for $500, and one to same for $1,000 and one to the First National Bank for $5,000, aggregating $6,500, thus leaving an indebtedness secured by said mortgage of $15,126.75, on which Stone was not indorser, enough to more than absorb all assets named in the mortgage after the payment of the first mortgage. Therefore, complaining parties are not interested in that question and can not be heard to complain, and the mortgagees have stipulated to share the assets *pro rata.*

For the above reasons the order of distribution made by the County Court is reversed and the cause remanded.