THATCHER v. VALENTINE, ASSIGNEE.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—DEED—RECORD.

A record of a deed of assignment in the county where the assignor resides is necessary to vest title in the assignee.

2. SAME—NOTICE.

The filing of a notice of assignment such as the statute requires in the county where real estate of the assignor is situate, if it be not the county of the assignor's residence, is necessary to give constructive notice to innocent purchasers and incumbrancers, including attaching creditors, and to protect the title of the assignee as against them.

3. SAME—PRESUMPTION OF ASSENT.

The statutory presumption of assent of creditors to a general assignment for their benefit is *prima facie* only, and not conclusive.

4. JURISDICTION, CONCURRENT.

When two courts have concurrent jurisdiction of the same subject-
matter, the one first acquiring jurisdiction in the particular case
will retain it to the exclusion of the other.

5. SAME.

Where a part of the real property assigned by an insolvent is in a county
other than that of his residence and had been attached under a writ
from the district court of the county in which the land is situate
prior to the filing of a statutory notice of assignment, the court
from which the writ was issued has exclusive jurisdiction of the
property levied upon.

*Appeal from the District Court of Arapahoe County.*

ON THE 8th day of March, 1894, the appellee filed in the
district court of Arapahoe county a petition entitled " In the
Matter of the Assignment of M. J. McNamara," and addressed
to the honorable judges of that court, wherein it is alleged,
in substance, that on the 18th day of July, 1893, M. J. Mc-
Namara, a resident of the county of Arapahoe, state of Colo-
rado, made a general assignment, conveying to one M. M.
Van Fleet, as assignee, all his property of every kind and
description, real, personal and mixed, situate in the state of
Colorado or elsewhere, for the benefit of his creditors.    That
said deed was recorded on the 18th day of July, 1893, in the
office of the clerk and recorder of Arapahoe county, Colorado.
That afterwards the said Van Fleet neglected and failed to
qualify as such assignee, and the petitioner was duly ap-
pointed assignee in his place, by an order of the district
court of Arapahoe county, entered on or about the 29th day
of July, 1893.    That among the property conveyed by the
said McNamara as above, by said deed of assignment, was
the following:

An undivided three eighths interest in the certain lode min-
ing claim known as the " Mary and Edith;" an undivided
three eighths interest in a certain lode mining claim known
as the " Jote Smith;" and an undivided three eighths interest
in a certain other lode mining claim known as the " True-
worthy," situate in the Roaring Fork mining district, Pitkin

county, Colorado.   That on the 19th day of July, 1893, one
Mary E. Thatcher, a resident of Pitkin county, Colorado,
brought suit in the district court of that county against M. J.
McNamara to recover the sum of $6,800.   That in said suit
she caused an attachment to be issued and the writ to be
levied upon all right, title and interest of said M. J. Mc-
Namara in and to the property above described.   That after-
wards she obtained a judgment against the said M. J. Mc-
Namara in the district court of Pitkin county, and caused an
execution to be issued to the sheriff of Pitkin county, who
sold said property at sheriff's sale under said execution on
the 20th day of September, 1893.   That she became the pur-
chaser at said sale, and the sheriff issued to her his certificate
of sale of said property.   That on the 21st day of October,
1893, the said certificate of purchase was recorded in the
office of the county clerk and recorder of Pitkin county.

Prayed that a summons issue requiring said Mary E.
Thatcher to appear and answer the petition, and that upon
final hearing an order be entered directing and commanding
her to release and forever discharge said property from her
pretended claim, and that she be required to execute such a
release as shall accomplish this purpose, both releasing the
said title which she claimed by virtue of said sale, and releas-
ing the said levy of attachment; and for an order decreeing
that she holds no right or interest in said property by virtue
of said writ of attachment or purchase by her of the property
mentioned.   That she be punished for contempt, etc.

That afterwards, and on the 9th day of March, 1894, sum-
mons was duly served, and on the 23d day of April, 1894,
she filed her motion to strike the petition from the files be-
cause the same was unauthorized and the court had no juris-
diction to entertain the same.   Said motion being overruled,
afterwards, on the 9th day of August, 1894, she filed her
demurrer, setting forth several grounds, attacking the suffi-
ciency of the petition and the jurisdiction of the district court
of Arapahoe county, or the honorable judges thereof, to pass
upon or decide the questions presented, which demurrer was

overruled. Thereupon she filed her answer, wherein she substantially admits the facts alleged in the petition, and alleges, *inter alia*, that the only notice of said assignment ever filed by said M. M. Van Fleet with the clerk and recorder of Pitkin county, Colorado, the county wherein said real estate is situated, was not filed until 5 o'clock P. M. of the 24th day of July, 1893; and that the only notice of said assignment ever filed in the office of said clerk and recorder by the appellee Valentine was filed on September 2, 1893.

Alleges that she commenced the said action against M. J. McNamara on the 18th day of July, 1893, and sued out said writ of attachment and had the same levied upon said real estate on the 19th day of July, 1893, without any notice or knowledge of any kind of the existence of the deed of assignment. Avers that the said McNamara was duly served with summons and the writ of attachment in that action, and that said Van Fleet and Valentine had actual notice of its pendency, and of said writ of attachment and the levy of the same on the property described in said petition. That on the ——— day of June, 1894, the time allowed by statute for the redemption of said property by said McNamara, or his judgment creditors, having passed without the same having been redeemed, the sheriff executed to her a sheriff's deed conveying said property to her in pursuance of said sale, which deed she caused to be recorded in the office of the clerk and recorder of Pitkin county, Colorado.

Other matters of defense were alleged in the answer, but as they have no material bearing upon the questions that we regard as decisive of the case, we omit them from this statement.

To this answer a demurrer was filed, and sustained. Mrs. Thatcher electing to stand upon her answer, judgment was entered in favor of appellee, adjudging him, as such assignee, to be the owner of the property described, free and clear from all liens in her favor by virtue of said attachment or sheriff's deed, and annulling and canceling said deed and the levy of execution and the writ of attachment upon the

property, and decreeing that she had no right, title or interest in said property adverse to the rights of appellee, and ordering her to release and forever discharge the said property from her pretended claim, and to execute a quitclaim deed of said property to said Valentine, as assignee of said M. J. McNamara, and adjudging her to pay the costs. To reverse this order and judgment she brings the case here on appeal.

Mr. J. W. TAYLOR and Mr. W. O'BRIEN, for appellant.

Mr. A. B. SEAMAN and Mr. HUGH BUTLER, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

The facts appearing from the foregoing statement, in brief, are that McNamara, a resident of Arapahoe county, Colorado, made, executed and acknowledged a general deed of assignment for the benefit of his creditors, which was filed for record in the office of the clerk and recorder of said county on the 18th day of July, 1893. On the same day Mrs. Mary E. Thatcher, a resident of Pitkin county, brought her action in the district court of that county against said McNamara, and sued out a writ of attachment, which was levied, on the 19th day of July, 1893, upon certain real property standing in his name on the records of that county. By subsequent proceedings she recovered a judgment against McNamara, caused the attached property to be sold under execution, purchased the property at such sale, and ultimately obtained a sheriff's deed to the same. At the time the action was brought and the attachment levied, no notice of the assignment was filed in Pitkin county, nor had she actual notice of such assignment. Under this state of facts, did she obtain a valid lien upon the real estate, or did the assignee, by virtue of the deed of assignment recorded in Arapahoe county, become vested with the title to said property, clear and free of any such incumbrance?

And, second, can the rights of these respective parties to the land in question be determined by the district court of Arapahoe county in the summary mode adopted by the assignee in this case?

The solution of the first question depends upon the meaning and effect of the following provisions of our statutes regulating general assignments for the benefit of creditors, (Session Laws of 1885, p. 43):

"SEC. 1. Any person, co-partnership or corporation may make a general assignment of all her, his or its property for the benefit of the creditors of such assignor, by deed duly acknowledged which, when filed for record in the office of the clerk and recorder of the county where the assignor resides, * * * shall vest in the assignee the title to all the property, real and personal, or either real or personal of the assignor, in trust, for the use and benefit of such creditors."

"SEC. 4. In case of the assignment of property for the benefit of all the creditors of the assignor, the assent of the creditors shall be presumed."

"SEC. 6. Where real property, or any interest therein, is, by such deed, conveyed to the assignee, the assignee shall forthwith file with the clerk and recorder of each county where the real estate is situated, a notice of the assignment, containing the names of the assignor and assignee, the date of the deed of assignment, when and where recorded, and a description of the property in that county affected thereby, and the same shall be constructive notice to a purchaser or incumbrancer of the transfer of the property in said county, described in such notice."

And Session Laws of 1893, p. 64:

"SECTION 1. That an assignee for the benefit of creditors appointed and qualified under and in pursuance of An Act entitled 'An Act in relation to assignments for the benefit of creditors, and to repeal acts inconsistent therewith:' approved, April 10th, 1885, shall be held and deemed to be an officer of court. And any interference with the said assignee in the discharge of his duties shall be deemed contempt of

court, and no suit against the said assignee in relation to or concerning the property assigned, shall be begun or instituted against the said assignee without permission of the district court within and for the county wherein the assignment is made first had and obtained."

It is contended by counsel for appellee that, by force of section one, the title to the property in question becoming vested in the assignee as an officer of the court, upon filing the deed of assignment for record in the county of Arapahoe, all of the assigned property, wherever situated, was from that time in the custody of the district court of that county ; and the assignment being for the benefit of all the creditors of the assignor, by section four appellant's assent to such assignment being conclusively presumed, she was estopped from acquiring a valid attachment lien upon the assigned property, notwithstanding the notice required by section six was not recorded in Pitkin county prior to its levy. In other words, that the want of such notice protects only purchasers and incumbrancers who become such through the fraudulent act of the assignor, and cannot be invoked for the protection of a creditor who, without actual notice of the assignment, levies an otherwise valid attachment upon the assigned property.

Whether the possession of the assigned property situated in the county where the deed of assignment is recorded passes into the custody of the court upon the recording of the deed it is unnecessary to decide, since, by virtue of the provisions of section six, the property situated in other counties, notwithstanding the title is vested in the assignee, is subject to sale and incumbrance until the notice therein prescribed is filed with the clerk and recorder of such counties. It conclusively follows, therefore, that the mere vesting of title in the assignee, as to such property, does not, *ipso facto*, place it *in custodia legis*.

The deed of the assignor, like the deed of any grantor, conveys the legal title to the property, and would, but for the statute, vest such title in the assignee upon its delivery.

Therefore the statute, in making its record essential to vest title, as well as to constitute constructive notice, gives it the same and no more force than any other deed would have when recorded in the county wherein the real estate is situated. And to obviate the necessity of recording the deed in counties wherein real property assigned is situated other than the county of assignor's residence, section six provides, in lieu thereof, that notice of the assignment shall be filed in such counties, which shall be constructive notice of the transfer of the property therein described; and since the filing of such notice is necessary to give constructive notice to innocent purchasers and incumbrancers, and to protect the title of the assignee against them, although it vested in him upon the recording of the deed in the county of assignor's residence, the effect sought to be given to the mere vesting of the title, as against an attaching creditor, does not follow, unless his exclusion from the protection of section six rests solely upon the fact that he is conclusively presumed to assent to the assignment.

That an attaching creditor is an incumbrancer is conceded by counsel for appellee. Does the presumption of his assent to the assignment estop him from acquiring a valid incumbrance upon the assigned property, after the deed of assignment is recorded in the county of assignor's residence, and before the notice provided in section six is filed in the county wherein such property is situated? We think clearly not. The presumption of assent contemplated in section four obtains only in cases where no affirmative act on the part of the creditor evidences an intention to repudiate, or not to assent to, the assignment. It is a *prima facie* presumption merely, that may be overcome by evidence to the contrary.

In the case of *Spangler v. Sanborn*, 7 Colo. App. 102, recently decided in the court of appeals of this state, this identical question was presented, and upon a thorough consideration of section four in connection with other provisions of the statute, it is held that the presumption of assent on the part of a creditor contemplated in that section is not

conclusive, but exists merely in the absence of evidence to the contrary, and that a creditor was not estopped by any such presumed assent from acquiring a lien upon the assigned property.

In the reasoning of that opinion upon this subject we fully concur, and accept, as a correct interpretation of the meaning of the foregoing provisions of our assignment act, the conclusion there reached that the word "incumbrancer" is employed in section six "in its broad and general sense, and embraces every class of incumbrancers and every class of incumbrances. A lien or charge upon land, which binds it for the payment of a debt, is an incumbrance, and the holder of the lien is an incumbrancer. The incumbrance may be created by contract, or it may be acquired in pursuance of some statute. The lien of an attaching creditor is an incumbrance equally with a mortgage." *Spangler v. Sanborn, supra,* and cases cited.

The controversy in that case grew out of a state of facts identical with the facts appearing in this record, but the manner of procedure therein was different, in this, that the assignee intervened in the attachment suit, thereby presenting the question of the validity or the priority of the lien to the court having jurisdiction of the attachment proceedings, while in this case no appearance was entered in the action pending in the district court of Pitkin county, either by answer or intervention; but after the action therein had proceeded to judgment, and the attached property sold thereunder, appellee filed his petition in the district court of Arapahoe county, asking that the attachment lien and the sale on execution be set aside and held for naught and the title acquired by appellant be adjudged invalid, and that she be compelled to release all claim to said property.

Thus we have presented the question whether the district court of Arapahoe county had jurisdiction to determine, in this summary proceeding, the rights of the respective parties to the land in dispute. In support of the jurisdiction we are cited to numerous adjudged cases in the supreme court of

Illinois and some other states, under similar statutes. Among them, and perhaps the leading case on the subject, is that of *Hanchett v. Waterbury*, 115 Ill. 220, wherein it is held that their assignment act—very similar in its provisions to our own—was essentially, in its framework and detail, a general insolvent law, that conferred a special jurisdiction upon the county courts over the subject-matter of assignments, and the court says:

" To give the statute practical effect in all its provisions, we feel constrained to hold, as we do, that upon the making, filing and recording of the assignment, with the lists and schedules annexed, the county court wherein such assignment is filed and recorded, in its character as an insolvent debtor's court, by operation of law at once acquires jurisdiction over and becomes *possessed* of all the property and estate embraced within the assignment, subject, of course, to all prior liens and just claims that third parties may have to or upon it. * * * And all persons claiming an interest in or upon the fund, are subject alike to the summary jurisdiction of the court."

In that case Waterbury, as assignee, was in possession of the assigned property, and the county court, upon petition of the assignee, entered an *ex parte* order, enjoining and restraining the sheriff from executing a writ of replevin therefor.

The doctrine announced in this case has been uniformly followed in that state, and the jurisdiction of the county court upheld, in all cases where the assigned property was in the possession of the assignee, or where the county court had obtained jurisdiction over it at the time of the attempted interference therewith. On the other hand, where the property that is the subject of contention had not been reduced to the possession of the assignee, or brought within the jurisdiction of the county court at the time the lien attached, this summary jurisdiction has been denied. *Preston v. Spaulding*, 120 Ill. 208. In the latter case the court, referring to the foregoing cases, say:

" These cases were intended to hold, and properly, that when a voluntary assignment is made, under the statute, and the property assigned has passed into the possession of the assignee, such property is thereby brought within the jurisdiction and under the administrative control of the county court, and that the county court is vested with ample power and jurisdiction * * * to direct and control the disposition to be made of such property under the statute, and, in doing so, to adjudicate upon conflicting legal rights of claimants therefor, arising in that court. But these cases are not to be understood as holding that the county court is by this voluntary assignment act invested with general chancery powers and jurisdiction. such, for example, as was invoked by complainant's bill in this case, or as would be invoked on bill for specific performance, for removing cloud from title, and the like, although the property assigned might be therein involved; for, in respect of matters of a purely equitable character, specially cognizable in courts of equity, resort must still be had to the courts of general chancery jurisdiction."

To the same effect is the case of *Ide v. Sayer*, 30 Ill. App. 210. It was also held in the case of *Yates v. Dodge*, 123 Ill. 50, that where a writ of attachment was levied on real estate on November 6, 1885, at 10:20 A. M., and a deed of assignment for the benefit of creditors made by the attachment debtor was filed in the county clerk's office some three hours later, but not recorded in the recorder's office until May 4, 1886, that the attachment took precedence over the deed of assignment, and the assignee took the real property subject to the attachment lien. In the case before us, the attachment lien having been acquired prior to the filing of the notice of assignment in Pitkin county, it was a valid one and took precedence over the deed of assignment; and thus being a valid prior lien, the case would fall within the rule announced in the latter line of decisions.

Certainly, under the circumstances disclosed in this record, the district court of Pitkin county having first acquired juris-

diction of the subject-matter in controversy, the district court of Arapahoe county had no authority to interfere with the action of that court, or to cancel or set aside its process in this summary way, or at all, under the familiar rule that when two courts have concurrent jurisdiction of the same subject-matter, the court first acquiring jurisdiction will retain it to the exclusion of the other. In the case of *The Plume & Atwood Mfg. Co. v. Caldwell*, 136 Ill. 163, a voluntary assignment was consummated after the levy of an execution and certain writs of attachment in favor of several of the creditors. The court, in passing upon the right of the county court to interfere under such circumstances, say :

" A voluntary assignment by an insolvent debtor, after a valid levy of an execution or writ of attachment on all his personal property, and while the sheriff has the same in his custody, necessarily fails to confer jurisdiction over such property upon the county court; nor will that court have power to interfere with the execution of process of other courts of competent jurisdiction."

Our conclusion, therefore, is that by the levy of the attachment prior to the filing of the notice of assignment in Pitkin county, appellant acquired a valid lien, and that the property in dispute passed to the assignee subject to such lien ; and the district court of Pitkin county having first acquired jurisdiction over the subject-matter, its judgment is conclusive, and the district court of Arapahoe county had no power or authority to entertain this proceeding, or to render the judgment complained of. The judgment will therefore be reversed, and the cause remanded, with directions to the district court to dismiss the proceeding.

*Reversed.*