Peter Jappas, Appellant, v. Julia Williams, Administratrix of the Estate of James E. Williams, Deceased, Appellee. Illinois Merchants Trust Company and Farroll Brothers, Garnishees.

Gen. No. 32,254.

Opinion filed May 8, 1928.

J. V. DeLaney, for appellant.

Sumner C. Palmer, for appellee.

Mr. Justice Gridley delivered the opinion of the court.

On September 4, 1926, plaintiff commenced an attachment suit against James E. Williams, stating in the affidavit that Williams is indebted to him in the aggregate amount of $2,053.40, which he paid to Williams "upon certain checks drawn by Farroll Brothers upon the Illinois Merchants Trust Co., and which were falsely represented by Williams to be genuinely indorsed when in fact the said indorsements were forgeries," and that "the debt sued for was fraudulently contracted on the part of the debtor, and that the statements of Williams which constituted the fraud were reduced to writing and signed by him." According to the bailiff's return on the writ, he did not find any property of defendant upon which to levy and did not serve him, but on September 7th he served the writ upon the Illinois Merchants Trust Company and Farroll Brothers as garnishees. Although interrogatories in the usual form were filed, the present transcript does not disclose that either of the garnishees filed an answer thereto. On September 27th Williams was served under an *alias* writ, and on October 22nd plaintiff suggested of record Williams' death. On November 29th, leave was given Julia Williams, as administratrix of Williams' estate, to be made the party defendant and on that day she entered her appearance. On December 23rd she filed a traverse of the attachment, sworn to, stating that the debt "was not fraudulently contracted" and that the alleged statements of Williams, which it is stated constituted the fraud, "were not reduced to writing and signed by him or his agent." On January 21, 1927, by leave of court, plaintiff filed an amended affidavit of attachment, substantially the same as the original, with the additional allegations that the checks mentioned were four in

number and that Williams, when falsely representing to plaintiff that they bore the genuine indorsements of the respective payees, "well knew" that said indorsements were forgeries, and on February 1st, by leave of court, plaintiff filed an amended statement of claim. On February 8th, the motion of Julia Williams, as administratrix, "to abate the action" was denied. On February 14, 1927, after a trial before the court without a jury, the court found the issues *as to the attachment* against plaintiff, but found the issues *as to the merits* against Julia Williams, as administratrix, and assessed plaintiff's damages at $2,053.40. On the same day judgments were entered upon these findings, the court adjudging (a) that "the attachment herein be and it is hereby overruled and denied," and that the garnishees (naming them) be discharged, and (b) that plaintiff recover from Julia Williams, as administratrix, said sum and costs, "to be paid in due course of administration." From that portion of the judgment quashing the attachment plaintiff prayed and perfected the present appeal. Julia Williams, as administratrix, did not appeal from the judgment entered against her on the merits, and she has not here assigned any cross-errors.

In plaintiff's amended statement of claims he alleges that on July 15th, July 20th, August 4th and August 11th, 1926, respectively, James E. Williams delivered to him four certain checks, payable respectively to the order of K. N. Root, P. G. Hart, Joseph B. Bohnen and N. D. Kaplan, and for the respective amounts of $300, $303.40, $450 and $1,000; that the checks were drawn by Farroll Brothers on a Chicago bank, the Illinois Merchants Trust Company; that when delivered each check was indorsed "by what purported to be the signature of the payee thereof," and said signatures "were represented to plaintiff by said Williams to be the genuine signatures of said payees"; that plaintiff, believing the representations to be true, paid to Wil-

liams at his request the several amounts of the checks, aggregating $2,053.40; that the indorsements were forgeries, which Williams then and there well knew, and thereby plaintiff lost said aggregate sum, and that by reason of the premises Williams became liable to pay plaintiff said sum, and being so liable promised to pay it, etc., but has not done so, to plaintiff's damage, etc.

Upon the trial plaintiff's evidence disclosed in substance that he was in the restaurant business on South LaSalle street, near the Chicago Board of Trade, and was well acquainted with Williams who, during the months of July and August, 1926, was employed as a bookkeeper by Farroll Brothers, a corporation, engaged in a commission business in the vicinity; that the four checks were made out by Williams, payable to the order of the respective payees; that Williams, upon representing to an officer of Farroll Brothers that the payees were customers of that corporation and that it owed to them the amounts of the respective checks, procured said officer to sign them in the usual course of business and deliver them to Williams; that Williams indorsed the name of the payee on the particular check (in other words committed a forgery), presented the same to plaintiff at his place of business and requested plaintiff to cash it and give him money to the face amount of the check, which plaintiff did; that afterwards plaintiff, underneath the indorsement of the payee, also indorsed the same, deposited it with said bank and received credit therefor on his account with the bank; that thereafter the check was paid through the Chicago Clearing House in the usual course of business, and that the same procedure was followed as to all four checks. Plaintiff introduced the four checks in evidence. Neither the name nor the signature of Williams appears on any of them. After the forgeries on the checks had been discovered, the bank, in a letter to plaintiff dated August 23, 1926, advised him of that fact, and that it had charged his

account with the amount of the checks for which it had previously given him credit, and thereby plaintiff lost the moneys which he had given Williams at the times the checks were cashed as above stated.

The sole ground for the attachment, as stated in plaintiff's original and amended affidavits, is that which is set forth in paragraph ninth of section one of the Attachments Act, Cahill's St. ch. 11, ¶ 1, subd. 9, as follows: "Where the debt sued for was fraudulently contracted on the part of the debtor: *Provided,* the statements of the debtor, his agent or attorney, which constitute the fraud, shall have been reduced to writing, and his signature attached thereto, by himself, agent or attorney." Plaintiff's counsel here contends that the court erred in quashing the attachment and discharging the garnishees. Counsel argues in substance that, in addition to the evidence showing that the debt sued for was fraudulently contracted on the part of Williams, the forged indorsements on the checks made by him constitute such fraudulent statements in writing as warranted the sustaining of the attachment. We cannot agree with the contention or argument. We do not think that Williams writing on the back of the checks the names of the respective payees thereof can be construed as "statements" in writing made by him, constituting the fraud. Furthermore, his signature is not attached thereto, either by himself, agent or attorney. And we do not think the case of *Yates v. Dodge,* 123 Ill. 50, cited by counsel, is in point. There the writing in question actually was signed by Yates.

It further appeared from plaintiff's evidence that after Williams' forgeries had been discovered and criminal proceedings had been threatened or commenced against him, his attorney wrote plaintiff's attorney a letter, dated September 2, 1926, in which the former acknowledged receipt of a previous letter written by the latter to Williams, and in which it is stated:

"While Mr. Williams admits that he obtained over $2,000 from your client by reason of having cashed checks the endorsements of which were not genuine and that he will do all in his power to right the wrong which he did to your client, but requires a little time to do same." Plaintiff's counsel further contends that this letter of itself, being written by Williams' attorney, is sufficient to warrant the sustaining of the attachment. We do not think so. It is not a statement in writing of the debtor, or his agent or attorney, made at the time the debt was contracted. It is, so to speak, a statement made after the fact, an admission of previous wrongdoing, coupled with the expressed desire to make amends. Furthermore, Williams' signature is not attached thereto, "by himself, agent or attorney," and it does not sufficiently appear that Williams authorized his said attorney to write such a letter. And in our opinion the court did not err in refusing to admit certain evidence offered by plaintiff as to a certain existing custom whereby, as claimed, employees of the Board of Trade firms dealt in grain under assumed names.

In the brief of counsel for appellee, Julia Williams, administratrix, it is contended that the court erred in denying her motion to abate the entire suit. She is in no position on the present record to make the contention. She did not appeal from the judgment rendered against her in her representative capacity, and she has not here assigned cross-errors. However, we think the court ruled correctly in denying her said motion. (Section 11, Abatement Act, Cahill's St. ch. 1, ¶ 11; *Davis v. Shapleigh,* 19 Ill. 386, 389; *Dow v. Blake,* 148 Ill. 76, 89; *Olson v. Scully,* 296 Ill. 418, 422.)

The judgment appealed from is affirmed.

*Affirmed.*

BARNES, P. J., and SCANLAN, J., concur.