**PAINEWEBBER INCORPORATED, Plaintiff,**

v.

**CAN AM FINANCIAL GROUP, LTD., Timothy McDonald and Mark George, Defendants.**

**No. 87 C 6890.**

United States District Court, N.D. Illinois, E.D.

Aug. 25, 1987.

Michael B. Roche, James D. Adducci, L. Andrew Brehm, Schuyler, Roche & Zwirner, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION

MAROVITZ, Senior District Judge.

**Plaintiff's Ex Parte Motion for Partial Reconsideration Of This Court's August 17, 1987 Order Regarding Attachment**

On August 5, 1987, Plaintiff PaineWebber ("PW") filed a complaint with this court against defendants Can Am Financial Group, Ltd., Timothy McDonald and Mark George ("Defendants"). The complaint alleges that Defendants opened a securities account with PW, ordered PW to purchase stock costing $319,338.65, and tendered to PW two checks: one for $10,000.00 (for which there is no dispute) and one for $309,388.65 (which subsequently "bounced"). The complaint states that after crediting their account for the amount received on the later sale by PW of the stock, Defendants still owe PW $245,308.66.

On August 11, 1987, PW moved this court to issue an ex parte temporary restraining order ("TRO"), a preliminary injunction and a writ of attachment. In an opinion dated August 17, 1987, all three motions were denied.

Currently before the court is PW's *ex parte* motion for partial reconsideration of the August 17, 1987 order. Specifically, PW is requesting that this court consider the bond and additional affidavit attached to the reconsideration motion and issue an order granting attachment. For the reasons set forth below, the instant motion is also denied.

### I. The August 17, 1987 Order

In its August 11, 1987 motion, PW sought, in part, a writ of attachment in accordance with Illinois statutory law, specifically, Illinois Revised Statutes chapter 110, paragraph 4–101, *et seq.* Federal Rule of Civil Procedure 64 provides the authority for this court to apply the Illinois attachment law. *Lechman v. Ashkenazy Enterprises,* 712 F.2d 327 (7th Cir.1983).

In the August 17 ruling, this court noted that Section 4–107 of the statute requires the movant to file with the court a bond for double the sum sworn to be due. As no bond had been filed and PW showed no indication that it intended to file a bond, this court stated that it would not proceed further on this matter and denied the motion.

Subsequently, PW has filed the instant motion. PW now moves the court to reconsider only that part of the August 17 order denying the attachment. PW attached to the motion to reconsider a bond for double the sum sworn to be due and an additional affidavit of Mr. Grant L. Ellington, a PW branch manager. As PW has now filed with this court the appropriate bond, the court will now more fully consider the motion for attachment.

### II. "Writs" of Attachment

At the outset, one matter should be cleared up. PW moves that this court issue a "writ" of attachment. Illinois has abolished "writs" and replaced them with the use of certified copies of the order or judgment to be enforced. Ill.Rev.Stat. ch. 110, para. 2–1501. Insofar as PW's misuse of the term "writ" is a harmless procedural matter, the court will continue with its legal analysis of PW's instant motion, with the understanding that PW is actually seeking an attachment order.

### III. Attachments

■ "Attachment in Illinois is an extraordinary [action] ... by which the owner of property is involuntarily dispossessed prior to any adjudication of the rights of the parties." *Vinylweld, Inc. v. Metropolitan Greetings, Inc.*, 360 F.Supp. 1360, 1361 (N.D.Ill.1973). Attachment was unknown at common law. *Rabbitt v. Frank C. Weber & Co.*, 297 Ill. 491, 497, 130 N.E. 787, 790 (1921). Attachment is a harsh action in derogation of the common law. *Id.* Attachment "is exclusively a creature of statute." Carr, *Attachment*, 42 Ill.Bar J. 814 (1954). Since the attachment action derives its validity from statute, it must strictly comply in all respects with the statutory requirements. *Rabbitt*, 297 Ill. at 497, 130 N.E. at 790; *Apollo Metals, Inc. v.*

*Standard Mirror Co.*, 87 Ill.App.2d 383, 231 N.E.2d 655 (1st Dist.1967).

Because the attachment action is so harsh, "the State Legislature has seen fit to circumscribe its use by conditioning its existence and validity upon compliance with a specific statutory grant." *Vinylweld*, 360 F.Supp. at 1361. Attachment is authorized in only nine specific instances. Ill. Rev.Stat. ch. 110, para. 4–101. Because the attachment statute is so specific, "[t]here have been few decisions construing the act and the basic decisions were rendered in the 19th century, shortly after its enactment." Carr, *supra.*

In the instant motion, PW argues that it is entitled to attach the property of the defendants under the ninth reason set forth in the attachment statute, Ill.Rev. Stat. ch. 110, para. 4–101(9). PW's Motion For Reconsideration at 3. This clause states, in relevant part:

> In any court having competent jurisdiction, a creditor having a money claim, whether liquidated or unliquidated, and whether sounding in contract or tort, may have an attachment against the property of his or her debtor, or that of any one or more of several debtors, either at the time of the commencement of the action or thereafter, when the claim exceeds $20, in any one of the following cases:
>
> . . . .
>
> 9. Where the debt sued for was fraudulently contracted on the part of the debtor. The statements of the debtor, his or her agent or attorney, which constitutes the fraud, shall have been reduced to writing, and his or her signature attached thereto, by himself or herself, agent or attorney.

Ill.Rev.Stat. ch. 110, para. 4–101.

Unlike the other eight clauses of paragraph 4–101, the ninth clause includes a "writing requirement". This requirement indicates a legislative intent that caution should be exercised when using paragraph 4–101(9). "The proviso in this clause [4–101(9)], requiring the fraud to be in writing and signed, guards against the seizure of a debtor's property without justification

and without actual proof of the fraud." Carr, *supra* at 817.

PW bases its request for an attachment on the ground that "[t]he insufficient funds check tendered to PaineWebber by defendants constitutes a signed statement by the debtor evidencing the fraud." PW's Motion For Reconsideration at 3. This court must decide whether the "insufficient funds check" (hereinafter "NSF check"), standing alone, is sufficient for the issuance of an attachment under paragraph 4–101(9).

The general rule in Illinois regarding the sufficiency of a writing under paragraph 4–101(9) is that "[t]he courts do not require that the fraudulent statement in writing include all statements constituting the fraud so long as it contains the gist of the fraudulent statements." Carr, *supra* at 817; *see also,* 7 Nichols Illinois Civil Practice § 6930 (1982). In other words, "[i]f ... the written facts are reasonably clear statements of the substance of the misrepresentations, then the writing is sufficient, under the statute." *Dodge v. Yates,* 21 Ill.App. 547, 550 (1886); *aff'd,* 123 Ill. 50, 13 N.E. 847 (1887). This court agrees. If the restrictive proviso in 4–101(9) is to have any real meaning, the writing involved must be able to state at least the substance of the fraud.

In the instant case, this court does not believe that the NSF check, standing alone, constitutes a writing that presents "reasonably clear statements of the substance" of the fraud alleged in the complaint. To allow the issuance of an attachment based only on an NSF check would do damage to the proviso in paragraph 4–101(9). This court doubts that the courts of Illinois would allow the attachment statute to be used by the recipient of any NSF check over $20 to attach the property of the alleged debtor, based on the "bounced" check alone. While the dollar amount involved in this instance makes an opposite result compelling, this court is not going to create such a potentially abusive precedent. Thus, PW's Motion For Reconsideration is denied.

In arguing for the issuance of an attachment, PW cites the case of *PaineWebber v.*

*Coleman,* No. 86 C 3682 (N.D.Ill.1986), in which Judge Holderman issued an attachment in a similar situation. PW's Motion For Reconsideration at 3. However, after reviewing relevant documents from that case, it is clear that the fact situation allowing for the attachment to be issued in *Coleman* can be distinguished from the instant situation. In *Coleman,* PW requested an attachment under 4–101(9) based on *two* signed writings evidencing the fraud: (1) an NSF check, and (2) a "Client Commodity Agreement" signed by the defendant. PW's Motion For Issuance of Writ of Attachment, *PaineWebber v. Coleman* (N.D.Ill.1986) (No. 86 C 3682). Judge Holderman does not indicate which writing he relied on to issue the attachment. However, after reviewing the relevant *Coleman* documents, and believing that an NSF check alone is insufficient, this court will assume that Judge Holderman issued the attachment based on the signed Client Commodity Agreement.

IV. Summation

For the reasons given, PaineWebber's Motion For Partial Reconsideration of the August 17 Order requesting the issuance of an attachment is denied. However, as the court can appreciate the situation in which the plaintiff feels that it is in, the court will set this matter for a status hearing for the first available court date following the filing of an appearance by the defendants.