SAMUEL P. COLT, Assignee, *vs.* SEARS COMMERCIAL CO. *et al.*

PROVIDENCE — APRIL 30, 1897.

PRESENT : Matteson, C. J., Stiness and Tillinghast. JJ.

An assignee who, with full knowledge of the transaction, elects to treat a transfer by his assignor as valid, cannot afterwards proceed to set it aside as an unlawful preference.

If an assignee receive property subject to a mortgage made by his assignor he must, before he sells the property, determine whether he will avoid the mortgage as a preference ; and if he sell the property subject to the mortgage he cannot afterwards avoid it.

" Subject to a mortgage " means, subject to the debt secured by the mortgage.

It would be inequitable to allow an assignee to avoid a pledge after a delay of more than eight years to question its validity, and who, by treating it as valid, had led the pledgee to rely on his security and to forbear to prosecute his action on the original debt until the latter (as to the assignor) had become barred by the statute of limitations.

A preference of one creditor over another is not fraudulent, and can be set aside only by a proceeding instituted under the statute.

Such a preference is not absolutely void, but voidable.

BILL IN EQUITY by an assignee to set aside a transfer by his assignor.    Heard on bill, answer, replication and proof.

TILLINGHAST, J.    The object of this bill is to set aside a transfer of bonds made by the National Rubber Co. to the Sears Commercial Co., on the 20th of September, 1887, as collateral security to a note of that date, made by said rubber company to said Sears Commercial Company, for $20,-997.83, on the ground that said transfer was a preference under Pub. Stat. R. I. cap. 237, § 15, and therefore liable to be set aside by the assignee.    Said section, as amended by Pub. Laws R. I. cap 274, is as follows : " Conveyances and payments made and securities given by an insolvent debtor or by a debtor in contemplation of insolvency within sixty days before the commencement of proceedings against such debtor, under the provisions of sections twelve and thirteen of this chapter, shall be void as to all creditors receiving the same who shall have reasonable cause to believe that such debtor was insolvent at the time of such preference, and the assignee of such debtor may sue for and recover the same."

The pleadings in the case properly raise the question as to the preference aforesaid, and also the question whether, in case said transfer was a preference, the complainant can now take advantage thereof. The case is before us on bill, answer, replication and proof.

Even admitting that the evidence shows that the giving of the security in question amounted to a preference within the meaning of said statute, as to that part of said note which represented the debt due to the Sears Commercial Co., which will hereafter appear, although it was clearly not a preference as to that part which represented the debt to Grace & Co., *Burnhisel* v. *Firman*, 22 Wall 177, yet we are of the opinion that the complainant with full knowledge of the transaction has elected to treat it as valid, and that it is now too late to set it aside.

The facts relating to said transaction are these, viz.: On September 20, 1887, the National Rubber Co. was indebted to the respondents, William R. Grace & Co., in the sum of $12,182.04, on its demand note of May 19, 1885, then more than two years overdue, as collateral security for which Grace & Co. held the bonds of the Rubber Company to the amount of $15,500, together with accumulated interest coupons thereon to the amount of $2,790. Grace & Co. were indebted to the Rubber Company in the sum of $1,795.08 for rebate of insurance on certain syndicate contracts, thus making the net indebtedness of the Rubber Company to Grace & Co. $10,368.96. The Rubber Company at the same time was indebted to the respondents, the Sears Commercial Co., upon its time notes given in the regular course of its business, as follows, viz.: Note due September 13, 1887, $3,000; note due November 9, 1887, $3,383.53; and note due November 15, 1887, $3,383.57. These notes were unsecured. An arrangement was entered into between the Rubber Company, acting through its treasurer, Mr. Augustus O. Bourn, on the one side, and Grace & Co. and the Sears Company on the other, whereby said debts were consolidated. That is to say: The Sears Company advanced to the Rubber Company $12,182.04 in cash, with which the

Rubber Company paid off its indebtedness to Grace & Co., whereupon the Rubber Company gave to the Sears Company a new demand note for $20,097.83, this amount representing the net indebtedness of the Rubber Company to Grace & Co., which had been taken up by the Sears Company as aforesaid, plus the debt of the Rubber Company to the Sears Company; and the bonds which had been held by Grace & Co. were then and there transferred to the Sears Company, as collateral security for the last mentioned note.

Such, then, being the transaction, we will briefly consider the testimony as to the knowledge which the complainant had thereof, and also as to the manner in which it was subsequently treated by him. The Rubber Company made an assignment to Col. Samuel P. Colt, the complainant, October 15, 1887. The books and papers of the Rubber Company, which have been in his possession ever since the assignment, contain a complete record of the transaction in question, and as early as November, 1888, he furnished to the Rhode Island Hospital Trust Company, the holder of the trust mortgage, a list of the holders of the bonds of the Rubber Company, which list purported to show what bonds had been sold and what were held as collateral. And in the latter class the Sears Commercial Co. appears as the holder of $15,500 of said bonds.

On February 9, 1888, Grace & Co. wrote to complainant as follows :

"NEW YORK, Feb'y 9th, 1888.

SAM'L P. COLT, ESQ., Pres't,
  *Industrial Trust Co.,*
   *Providence, R. I.*

DEAR SIR :—We are informed that provision has been made for the payment of the matured coupons of the bonds of the National Rubber Co. Will you kindly inform us if such is the fact, and where we shall send such coupons for payment.

    Yours truly,

      W. R. GRACE & Co."

On February 13th, next following, Col. Colt, in reply to this letter, wrote as follows :

"PROVIDENCE, R. I., February 13th, 1888.
MESSRS. WILLIAM R. GRACE & CO.,
        *Hanover Sq., New York.*

GENTLEMEN :—Your favor of the 9th inst. received upon my return from New York. Provision was made for the payment of the National Rubber Co's bonds that have been sold. If I am correctly informed, the bonds that you hold are collateral, and in such cases we have asked the parties to wait the adjustment of the affairs of the National Rubber Company.        Very truly yours,
                SAM'L P. COLT, *Assignee.*"

On May 3, 1888, Col. Colt, in a letter written in reply to one from Grace & Co. on the 2nd, inquiring for information as to where the past due coupons of the Rubber Company were to be paid, replied as follows :

"PROVIDENCE, R. I., May 3d, 1888.
MESSRS. WILLIAM R. GRACE & CO.,
        *Hanover Sq., New York.*

GENTLEMEN :—Your favor of May 2nd duly received. There is as yet no provision for past due coupons of National Rubber Company ; in fact we have not understood that there were any such outstanding, except upon bonds pledged, which of course were not expected to be collected. Please advise me what bonds you hold, and how they are held, also if you have any account with the old company. And oblige.
                Very truly yours,
                SAM'L P. COLT, *Treasurer.*"

And to this letter Grace & Co. replied by giving the information called for therein, said reply being as follows :

"NEW YORK, May 8, 1888.
SAMUEL P. COLT, ESQ.,
        *President Industrial Trust Co.,*
                *Providence, R. I.*

DEAR SIR :—In reply to your enquiry of the 3d inst., we

beg to advise you that we hold, for account of the Sears Commercial Co., Limited, a note of the National Rubber Co., dated Sept. 20, 1887, for the sum of $20,097.83, payable on demand, with interest thereon at six per cent. per annum from date ; together with 31 bonds of the said company of $500 each, and the matured coupons at that date, amounting to $2,790 ; said bonds and coupons being pledged as collateral security of said note.   Since that date another coupon has matured on these bonds, making present amount of matured coupons $3,255.

Yours very truly,

E. P. C.                                        W. R. GRACE & Co."

On May 15, 1888, Grace & Co. wrote again, as follows :

" NEW YORK, May 15, 1888.

SAMUEL P. COLT, ESQ.,
President Industrial Trust Co.,
Providence, R. I.

DEAR SIR :—In your favor of the 3d inst. you say : 'There is as yet no provision for the past due coupons of the National Rubber Co., in fact, we never understood that there were any such outstanding, except upon bonds pledged, which of course were not expected to be collected.'   To this understanding we cannot give our assent, as we consider that the bonds are a prior lien, and that the interest thereupon should be promptly met.   Therefore, we shall expect provision to be made for the payment of the $3,255 of past due coupons, as mentioned in our respects of 8th inst., in default of which provision we shall feel obliged to take steps to enforce our rights in the premises.   An early answer to this communication will much oblige.

Yours very truly,

E. P. C.                         .               W. R. GRACE & Co."

After further correspondence, which failed to result in any adjustment of the matter, the overdue interest coupons were forwarded to said Hospital Trust Co. for collection ; and upon notice of this fact being given to the assignee, the following letter was written to the trustee under the mortgage :

"PROVIDENCE, R. I., February 19th, 1889.

RHODE ISLAND HOSPITAL TRUST CO.,

  *Trustees under Mortgage, of National Rubber Company,*
               Dated July 15th, 1884.

GENTLEMEN :—Having received notice from you yesterday that certain overdue coupons, Nos. 1 to 8 inclusive, on bonds issued under mortgage of the National Rubber Company to you as trustee, had been presented to you for payment.

Upon investigation I infer from the numbers of the bonds from which said coupons are taken, (not being advised by you from what source the coupons came, or who presented them), that they are from thirty-one (31) bonds of $500 each, alleged by William R. Grace & Company to have been pledged to them as collateral security for a certain note, on September 20th, 1887, together with the matured coupons thereon, at that date.

Not having received demand from said William R. Grace & Company for the payment of said note, nor any notice of foreclosure of said bonds and coupons alleged by them to be held as collateral security therefor, I am advised that as assignee of the National Rubber Company I have no legal right to pay said matured and overdue coupons alleged to have been pledged as aforesaid.

I herewith inclose certified cheque to your order as trustee for $2,790. $930, the amount of coupons Nos. 7 and 8 maturing since said alleged pledge was made, you may pay from monies in your hands. $2,790 you may pay under protest, (submitting a copy of this statement) or may hold the same in trust for the payment of said coupons maturing previous to said alleged pledge when the title thereto shall have been determined.

                    Very truly yours,
                         SAM'L P. COLT, *Assignee.*"

The following letter, written shortly after the assignment, was sent to Mr. Bourn, who of course knew all about the transaction, and who was aiding the assignee in the settlement of the business :

"NEW YORK, Oct. 26, 1887.

HON. AUGUSTUS O. BOURN,
> *National Rubber Co.,*
> > *Bristol, R. I.*

DEAR SIR :—Acknowledging receipt of your favor of the 17th instant, enclosing proposed plan for the reorganization of the National Rubber Co., we have to say that, as far as we are creditors of the company, *unsecured* by first mortgage bonds, the proposed plan is entirely satisfactory to us. We understand that the bonded debt is to stand as a first lien on the entire properties.

> Yours truly,
> > SEARS COMMERCIAL CO., LTD.,
> > > (Signed) M. P. GRACE."

From the foregoing and other correspondence, taken in connection with the conduct of the assignee in paying the overdue interest on said bonds, and also in paying the subsequently accruing interest thereon down to that which fell due in July, 1894, a part of which interest was paid after he had learned that the Sears Company had sold the bonds to the respondent Schaefer, the present holder, we feel bound to hold that he had full knowledge of the manner in which said bonds were held, and that he elected to treat the transaction in question as valid and binding.

But, still further : When the assignee sold the Rubber Company's plant to the National India Rubber Co., in April, 1888, he made provision for the payment by the latter company of the principal and interest of the outstanding bonds of the Rubber Company, and the National India Rubber Co. thereafter furnished him with the funds necessary to meet the interest payments as they fell due. One of the terms of sale under which said plant was sold was as follows : "There is a mortgage upon the real estate, factories, buildings and improvements and machinery for the sum of $350,000, given by the National Rubber Co. to the Rhode Island Hospital Trust Co., Trustee, to secure the payment of bonds issued by the National Rubber Co. to the amount of $350,000. The

estate and property covered by this mortgage will be sold subject to this mortgage and the amount due or to become due thereon." And in the deed of the assignee it is provided that the intention of the parties is that, "while said mortgage and bonds and indebtedness thereby secured should not be assumed by the National India Rubber Co., nevertheless said mortgage, bonds and indebtedness, should be fully satisfied and paid out of said property and estates, and without recourse to said Samuel P. Colt, assignee, or to the assets of said National Rubber Company."

If, therefore, as contended by respondents' counsel, the assignee should pay the bonds in question, he would have only to demand reimbursement of the National India Rubber Co., and it must be made as provided, or the assignee may resort to the property. Moreover, it appears, as a matter of fact, that no attempt is being made to collect these bonds from the assets of the National Rubber Co. The holder is looking to his security, viz.: the property which is now in the hands of the National India Rubber Co., and which that company has received upon the express condition that these bonds shall be paid out of it.

To quote from another provision of the deed on the subject, the assignee, if he pays or takes up any of the bonds, "shall be subrogated" to the right of the original owner of said bonds against the estate. But if the assignee recovers said bonds without payment, on the ground that the present holders have no rights in them, to what is he subrogated? Subrogation is the "substitution of another person in favor of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Sheldon on Sub'n, § 1. But if the creditor is in a position where he has no rights, there is no opportunity for subrogation. The legal principle which underlies this discussion, as argued by counsel, is that, if an assignee receives property subject to a mortgage made by the assignor, he must, before he sells the property, determine whether he will avoid the mortgage as a preference; and if he sells the property subject to the mortgage, he cannot thereafter avoid such mortgage.

*Freeland* v. *Freeland*, 102 Mass. 478, Gray, J., says : " The assignee must therefore make his election before selling his interest in the mortgaged real estate. He may either treat the mortgage as valid, and sell the equity of redemption only, subject to the mortgage, or he may elect to avoid the mortgage and sell the whole title in the land." In *Tuite* v. *Stevens*, 98 Mass. 305, the court held that a sale by an assignee " subject to mortgage" was an affirmance by such assignee of the validity of the mortgages. Subject to a mortgage means, of course, subject to the debt secured by the mortgage. And if the assignee in this case had wished to avoid any part of the mortgage deed, he should have done so prior to the sale.

But the complainant contends that, notwithstanding the correspondence and other documentary evidence aforesaid relating to the transaction sought to be set aside, yet he never knew of the Sears Commercial Co. as a separate entity from Grace & Co., or of this new pledge of said bonds, until it was disclosed in the affidavits of Fisher and Ivins, filed in Equity No. 3843, in March, 1895, and that he always understood that he was dealing with Grace & Co. solely, and that they held said bonds as collateral. While it is not at all incredible that Col. Colt, occupied as he was in settling the complicated affairs of this large corporation, and at the same time running the works and taking a very active part in the organization of the National India Rubber Co., should have forgotten the information which he had received relating to the transaction in question, yet the fact remains that he had been fully informed in the premises, and hence his rights as assignee must be determined accordingly. Moreover, by reason of his delaying to question the validity of said pledge for upwards of eight years after it was made, and treating it as valid, he has led the pledgee to rely entirely on his security and to forbear to prosecute his action on the original debt, which has in the meantime, as to the assignor, become barred by the statute of limitations. So that, in the altered position of the pledgee, it would be inequitable to now allow the complainant to avoid the pledge.

But the complainant's counsel contends that as said transaction constituted a preference within the meaning of the statute above quoted, it was absolutely void, and not merely voidable. We do not understand that such is or ever was the law in this State. A preference of one creditor over another is not fraudulent, and can only be set aside by a proceeding instituted under the statute. *Perkins* v. *Hutchinson*, 17 R. I. 450. The case of *Hamilton* v. *Colt*, 14 R. I. 209, relied on by counsel in support of his contention, does not hold, as we understand it, that such a transaction is absolutely void, but only that the defendant in that case, who was in possession of the mortgaged property, whatever might be the thought of his title under the assignment, had a right to maintain his possession against the plaintiff by *showing* that the mortgage under which the plaintiff claimed was void.

In *Snow* v. *Lang*, 2 Allen, 18, which was an action brought by an assignee of an insolvent debtor to recover the value of property sold by the assignor for the purpose of giving a preference, the defence set up was that plaintiffs, being the assignees of the insolvent, had waived the right to avoid the sale and had affirmed it. To this it was replied that, as the statute declares the preference void, it could not be waived or affirmed. But it was held at the trial that the transaction was voidable only, and might be affirmed. On a petition for new trial, the court held that the ruling was correct, and said : " The word void is not always used in an absolute sense. It has from the earliest times been applied to fraudulent gifts of goods, which, though good against the donor, are said to be void as to his creditors. The transaction falls within the class of acts described as 'void as to some persons only ;' and which may be made good by subsequent matter. 10 Bac. Ab. Void & Voidable, B. 2, 3. The legislature have used the customary word ; yet, as creditors may affirm the sale, or waive their right to treat it as void, it is also properly called voidable."

Finally, after a very full and careful consideration of all the testimony in the case and of the law applicable thereto,

we have come to the conclusion that the complainant is not entitled to recover and that therefore the bill must be dismissed.

*James Tillinghast*, for complainant.

*Stephen O. Edwards & Walter F. Angell*, for respondents.