HUTTON v. JOSEPH BANCROFT & SONS CO. et al.

(Circuit Court, D. Delaware. October 12, 1897.)

1. CORPORATIONS—ACTION BY STOCKHOLDER—FAILURE TO APPLY TO CORPORATION.

A shareholder cannot maintain a suit to compel the surrender to the corporation of stock illegally transferred, the repayment of dividends paid thereon, and to prevent the further payment of dividends, unless he has first applied to the corporation itself to remedy the wrong.

2. EQUITY PLEADING—DEMURRER—TRUTH OF FACT ALLEGED.

On a demurrer to the bill the court is not precluded from examining the entire record in the cause for aid in determining the actual verity of a mere bald allegation that a certain thing will be done by another, unaccompanied by any circumstances giving it weight or credence.

William S. Hilles, for complainant.

Benj. Nields, for defendant Joseph Bancroft & Sons Co.

Lewis C. Vandegrift, for defendant Bloede.

DALLAS, Circuit Judge. This is a suit in equity, brought by a shareholder of the Bancroft Company against that corporation and Victor G. Bloede. Its objects are to compel Bloede to surrender to the Bancroft Company, for cancellation, certain shares of its stock, and to repay to that company money which he has received as dividends on that stock, and also to prevent any further payments to him of dividends now or hereafter declared. The relief thus sought is claimed upon the grounds: First, that Bloede obtained the shares in question from the Bancroft Company by means of false and fraudulent representations made by him to its officers; and, second, that the agreement to exchange shares of the stock of the Bancroft Company for a like number of shares of the Victor G. Bloede Company, in pursuance and consummation of which the Bancroft Company issued its shares to Bloede, was not authorized by the charter of the Bancroft Company, and was in violation of the statutes of Delaware, and of the rights of the complainant as a stockholder of the Bancroft Company. It is not alleged that any application had been made to the corporation, or to its officers or managing body, to remedy the alleged wrong, or to institute suit to that end; and inasmuch as, for this reason solely, the demurrer of the defendant Bloede must, in my opinion, be sustained, no other question will be consid-

ered.   It is not requisite to determine whether or not the ninety-fourth equity rule is applicable to this case, for my judgment is based upon the general principle, which, quite independently of that rule, is well settled, that a stockholder who conceives that his rights, as such, have been invaded or are imperiled either by an act done or threatened by the corporation, or by any transaction of a third party with it, must, before he can himself successfully invoke the aid of a court of justice, seek redress within the corporation of which he is a member, or properly endeavor to obtain suit to be brought in its name and on its behalf.   Dunphy v. Association, 146 Mass. 495, 16 N. E. 426; Holton v. Railway Co., 138 Pa. St. 111, 20 Atl. 937; Holton v. Wallace, 23 C. C. A. 71, 77 Fed. 61; Hawes v. Oakland, 104 U. S. 450.   The prayers for cancellation of stock issued to Bloede, and for the repayment by him of the dividends heretofore paid thereon, manifestly and necessarily concede that the alleged rights upon which they are founded are, if existent, rights of the corporation.   What is asked is that the delivery of the shares and repayment of dividends shall be required to be made to the Bancroft Company, and, of course, if there be a right to have either of these things done, it must be because that company, not a shareholder, is entitled to the delivery and repayment demanded.   I cannot agree with counsel of complainant that, because the dealing of the corporation with Bloede is charged to have been ultra vires, this bill may be maintained without previous effort having been made to induce action by the corporation. The question is not as to the right of a member of a corporation to redress for unlawful acts of any character which affect him injuriously.   The allegation either of deceit committed by Bloede or of illegal action on the part of the corporation may, it is assumed, without deciding, give this plaintiff title to relief, yet the condition none the less exists that he should have sought to move the corporation to action before appealing to the court himself.

The prayer for an injunction to restrain the Bancroft Company from paying any further dividends to Bloede cannot avail to sustain this bill.   There is no allegation whatever of any actual disagreement between that corporation and this complainant, and the only averment in supposed support of this particular prayer is "that other dividends will be declared on said shares of stock, which, together with said unpaid dividends, will be paid."   How it is known, or why it is believed, that such payments "will be" made is not even suggested, and it cannot be doubted that, if the corporation or its officers had been requested not to make them, and had refused compliance with that request, those facts would have been distinctly stated.   In Cook, Stock, Stockh. & Corp. Law, § 297, cited for the complainant, it is said, it is true, that "a court of equity will, upon a proper application, grant an injunction to prevent the transfer of illegally issued stock, or the payment of dividends thereon"; but the author proceeds to define what he means by "a proper application" by adding, in accordance with the authorities, that "a suit to that end may be commenced either by the corporation, or by the stockholders themselves in their own behalf, where the corporation fails or refuses to

institute it." It may well be questioned whether the bald assertion that an act will be done by another, unaccompanied by the disclosure of any circumstance to give it weight or credence, should be regarded as a fact well pleaded, and therefore to be, in general, taken as true upon demurrer. Aside from this, however, the court, I think, is not precluded, even on demurrer, from looking to its own record in the cause for any aid which it may lend for the ascertainment of the actual verity of an allegation so unsatisfactorily made as that under consideration (Railroad Co. v. Groeck, 68 Fed. 609–612); and the record in this instance makes it apparent that there is absolutely no ground whatever for apprehending that any further payments of any kind will be voluntarily made by the Bancroft Company to Bloede. As was said by Judge Wales, in disposing of the complainant's motion to remand, it appears from the answer of the Bancroft Company, which was filed before this demurrer was interposed, that there is "no matter of dispute, or any controversy, between the complainant and the defendant Joseph Bancroft & Sons Company. On the contrary, it is apparent that their interests in the outcome of the present suit are really the same, and that they are both seeking the same objects, to wit, the return and cancellation of the stock of the Bancroft & Sons Company which has been issued to Bloede, the repayment of the money paid to him for dividends thereon, and an injunction to prevent the payments of any further dividends on that stock." To uphold this bill at this stage merely because it alleges that a certain thing will be done in the future, without stating the grounds of that obviously inferential allegation, and despite the record evidence in disproof of it, would be but to invite persistence in a course of procedure which can lead to nothing but misdirected effort and the unprofitable expenditure of time and money. It is evident now that the Bancroft Company should have been the plaintiff in this suit, and it is therefore, I think, the duty of the court to decide now—as ultimately it would be compelled to do—that, as the suit of a shareholder, it cannot be maintained. The demurrer is allowed, with leave to the complainant to file any motion which he may be advised to make under rule 35 or otherwise, on or before November 1, 1897; and after that date either party may apply for further orders not inconsistent with the foregoing opinion.