WESTERLUND et al. v. BLACK BEAR MINING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 13, 1913.)

No. 3,807.

*(Syllabus by the Court.)*

1. MINES AND MINERALS (§ 105*)—MINING CORPORATIONS—CONTRACTS—VALIDITY.

A mining lease for five years of the mines, plant, and machinery of a mining corporation without the approving vote of its stockholders is an incumbrance and voidable by them under the statutes of Colorado,

which vest the general power to manage the affairs of the corporation in its board of directors, but declare that they shall not have power to incumber its mines, plant, or principal machinery incident to the production, without the approving vote of the holders of a majority of its shares of stock, and that any mortgaging or incumbering thereof without such consent shall be absolutely void. Revised Statutes of Colorado 1908, §§ 865, 977.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 229, 229½; Dec. Dig. § 105.*]

2. MINES AND MINERALS (§ 105*)—MINING COMPANIES—"INCUMBER."

The words "incumber" and "incumbering," when used with reference to property or its title, include within their meaning every right or interest in land or real estate which may subsist in third persons to the diminution of the value of the property or its title, but consistent with the passing of the fee by the conveyance of the owner thereof.

If the right or interest of the third person is such that the owner of the servient estate has not so complete an ownership and property in his land or real estate as he would have had if the right or interest spoken of did not exist, his land is in law diminished in value and incumbered.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 229, 229½; Dec. Dig. § 105.*

For other definitions, see Words and Phrases, vol. 4, pp. 3519–3527.]

3. STATUTES (§§ 188, 192, 206*)—CONSTRUCTION—GENERAL RULES—"POPULAR SENSE."

Words and phrases should be given their popular sense and meaning, unless there is a clear indication that they were used in a different sense. The popular sense of a word or phrase is that sense which people conversant with the subject-matter with which the statute is dealing would attribute to it.

When a word which has a known legal meaning is used in a statute, it must be assumed that it was used in its legal sense, in the absence of a clear indication of a contrary intent.

The legal presumption is that words and phrases in a statute are used in their usual or customary sense, unless it clearly appears that the Legislature intended to use them in a more restricted or different sense.

"All the words of a statute must have effect rather than that part should perish by construction."

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 270, 276, 283; Dec. Dig. §§ 188, 192, 206.*]

4. COURTS (§ 366*)—FEDERAL COURTS—DECISIONS OF STATE COURTS AS PRECEDENTS.

The federal courts consider themselves bound to adopt and follow the decisions of the highest judicial tribunal of a state interpreting its statutes alone. The decisions of lower courts are argumentative only.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

5. CONTRACTS (§ 134*)—EVIDENCE (§ 16*)—PRINCIPAL AND AGENT (§ 164*)— JUDICIAL NOTICE — CONSTRUCTION — STATUTORY PROVISIONS — "VOID" — RATIFICATION.

Courts take judicial cognizance of the fact that the word "void" is used in statutes in the sense of utterly void so as to be incapable of ratification, and also in the sense of voidable by those alone whose rights are infringed without expressed discrimination, so that resort must be

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had to the rules of construction in many cases to determine in which sense the Legislature intended to use it.

An act or contract declared to be void by statute which is malum in se, or against public policy, is generally utterly void and incapable of ratification.

An act or contract which is neither wrong in itself nor against public policy, which has been declared void by statute for the protection or benefit of a certain party, or class of parties, is voidable only, is capable of ratification by the beneficiary or beneficiaries of the statute, and it may be avoided by him or them alone.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 722; Dec. Dig. § 134;* Evidence, Cent. Dig. § 20; Dec. Dig. § 16;* Principal and Agent, Cent. Dig. §§ 622–625; Dec. Dig. § 164.*

For other definitions, see Words and Phrases, vol. 8, pp. 7332–7339.]

**6. CORPORATIONS (§§ 386, 387, 388*)—POWERS AND LIABILITIES—CONTRACTS.**

An act or contract of a corporation which is beyond the scope of its corporate powers, which it cannot lawfully do in any way or manner under any circumstances, is void and incapable of ratification by estoppel or otherwise, and the corporation itself may challenge it.

But an act or contract of a corporation which is within its corporate powers, is not wrong in itself, nor against public policy, but is forbidden and declared void by statute for the benefit or protection of a certain party, or class of parties, is voidable only and voidable by the party or parties alone for whose benefit the statute was enacted.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1518, 1553, 1554–1555, 1556–1567; Dec. Dig. §§ 386, 387, 388.*]

**7. MINES AND MINERALS (§ 105*)—MINING CORPORATIONS—AVOIDANCE OF CONTRACT.**

Neither the corporation nor its creditors, nor others claiming under it, had the right to avoid the mining lease in question in this case on the ground that it was executed without the approving vote of the stockholders, because the requirement of that assent was not made for their benefit and they were estopped from enforcing it by the execution of the lease by the corporation. The stockholders alone had the right to enforce that requirement because it was enacted for their benefit and protection alone and they alone had any beneficial interest in its observance.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 229, 229½; Dec. Dig. § 105.*]

**8. CORPORATIONS (§ 189*) — POWERS AND LIABILITIES — RULES IN EQUITY — PLEADING.**

It is only when stockholders exhibit a bill against their corporation and others, "founded on rights which may be properly asserted by the corporation," that they are required to comply with rule 94 in equity. The right of these stockholders to avoid the mining lease on the ground that it was made without a compliance with the statutory requirement of an approving vote of the stockholders could not be properly asserted by the corporation, but could be asserted by the stockholders alone, and rule 94 was inapplicable to their bill or suit in this case.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 706–722; Dec. Dig. § 189.*]

**9. QUIETING TITLE (§ 7*)—EQUITABLE JURISDICTION.**

There is a legal presumption that a cloud or an unlawful incumbrance upon the title to real property inflicts such an injury upon parties who have a lien upon or interest therein and who have the right to the freedom of the title from such a cloud or incumbrance as will invoke the jurisdiction of a court of equity to remove it.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14–33; Dec. Dig. § 7.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*(Additional Syllabus by Editorial Staff.)*

**10. MINES AND MINERALS (§ 105\*) — MINING CORPORATIONS — CONTRACTS — AVOIDANCE.**

Under Rev. St. Colo. 1908, §§ 865, 977, declaring that the board of directors of a mining corporation shall not have power to incumber its mines, plant, or principal machinery incident to the production without the approving vote of the holders of a .majority of its shares of stock, a bill of the stockholders to avoid a lease entered into without such approval is not objectionable, though it alleges that the lease was executed by the president and secretary of the corporation instead of the board of directors.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 229, 229½ ; Dec. Dig. § 105.\*]

**11. MINES AND MINERALS (§ 105\*) — MINING CORPORATIONS — CONTRACTS — AVOIDANCE OF STOCKHOLDERS.**

That, at the annual meeting of stockholders following the execution of a lease which was executed without the approving vote of the stockholders, they voted to reject the lease, does not affect the right of action of the stockholders to avoid the lease for want of their approval of its execution.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 229, 229½ ; Dec. Dig. § 105.\*]

**12. EQUITY (§ 87\*)—LACHES—ANALOGY WITH LIMITATIONS.**

Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous limitations at law.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 242–244, 395 ; Dec. Dig. § 87.\*]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Bill in equity by Lisi Westerlund and others against the Black Bear Mining Company and others. From a decree for defendants, complainants appeal. Reversed and remanded, with instructions.

John S. Macbeth, of Denver, Colo. (Henry F. May, of Denver, Colo., on the brief), for appellants.

L. F. Twitchell, of Denver, Colo. (Allen & Woy, of Telluride, Colo., and Goudy & Twitchell, of Denver, Colo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree which sustained the demurrers to a bill and dismissed a suit brought by four of the stockholders of the defendant the Black Bear Mining Company, a corporation organized under the laws of Colorado, to avoid a mining lease of all the property of that corporation which was alleged to be worth $600,000, and to consist of mining claims and mines in the state of Colorado, on the ground that this lease was made without an approving vote of the holders of a majority of the stock of the corporation, in violation of section 865 of the Revised Statutes of Colorado; 1908. The corporation by the terms of the lease demised and let to the defendant J. B. Bailey all its mines and mining claims, its stamp reduction mill, its tramway, all its buildings, the right to occupy this

property, and the right to remove from it any and all the ore therein or thereon, during the term of five years from October 31, 1910, to October 31, 1915, in consideration of the covenants of the lessee to pay certain royalties named in the lease and to do certain acts therein specified. This lease was subsequently assigned by Bailey to the Black Bear Mining Company, another corporation of the state of Colorado, and the other defendant in the suit; but in the discussion of the questions at issue the lease will be treated as though it was still held by Bailey. The Black Bear Mining Company covenanted in the lease that in case it made a sale of the premises the lessee should receive $60,000, or 10 per cent. of the selling price if that was more, and that in the event of such a sale the rights of the lessee to the possession and use of the property and to the extraction of ore therefrom should not cease until the expiration of one year from the date of the lease, nor then unless he had received six months' notice of the sale before it should be made.

[1] The statutes of Colorado under which the Black Bear Mining Company exists contain these provisions:

"The stock, property and concerns of any company organized under the provisions of this act shall be managed by not less than three nor more than nine directors, who shall respectively be stockholders in said company." Revised Statutes of Colorado 1908, § 977.

"In all mining companies or corporations hereafter formed, in which the stock is made assessable under the charter or by the laws of this state, the board of directors shall have full and absolute power to levy assessment or assessments, to rescind the same and to declare dividends and to do all other acts which they may deem for the best interest of the stockholders of the company, or corporation, and which they may deem necessary for the proper development of any mine or mines belonging to such company or corporation." Section 978.

"The corporate powers shall be exercised by a board of directors or trustees of not less than three nor more than thirteen, who shall respectively be stockholders in said company. * * * The board of directors or trustees of a mining or manufacturing corporation shall not have power to incumber the mines or plant of such corporation, or the principal machinery incident to the production from such mine or plant until the question shall have been submitted at a proper and legal meeting of the stockholders and a majority of all the shares of stock shall have been voted in favor of such proposition; and any mortgaging or incumbering of such property without such consent shall be absolutely void, and the vote upon such proposition shall be entered on the minutes of the corporation." Section 865.

It is not denied that the last paragraph of section 865 deprives boards of directors of mining corporations organized under the laws of Colorado, and the corporations themselves, of the power to incumber their property in the absence of approving votes of their stockholders. But counsel for this corporation argue, and the court below held, that this mining lease was not an incumbrance upon the property of this corporation, and hence that it did not fall within the terms of this paragraph of the statute because it was neither a mortgage, nor did it evidence a pledge for the payment of money. This contention presents the first question to be determined in this case.

Before entering upon its discussion, let us examine, for a moment, the statute and the effect of the lease. The law expressly withholds

from the board of directors of a mining company, the power "to incumber the mines or plant of such corporation, or the principal machinery incident to the production from such mine or plant." It is evident that it was the production from such mine or plant by the corporation that the statute was enacted to protect. It was the power to hinder or prevent the production by the corporation from its mine or plant by an incumbrance, either of the mine or of the plant, or of the principal machinery incident to the production, that was clearly and expressly withheld from the board of directors and officers of the corporation in the absence of an approving vote of the stockholders. But this mining lease deprives the corporation of all right and power to produce ore from its mine or plant, or with its machinery, for five years, and perhaps forever, for it grants to the lessee the right within the five years to remove all the ore from the property so that at the end of that time there may be none to produce. An ordinary lease for years grants nothing but the occupancy and use of the premises and requires their return without substantial diminution of the property or its value at the end of the term. But this mining lease is not of that class. It conveys the right to take from the body of the property all its value and to leave it at the end of the term a worthless shell.

"A mining lease is a grant in præsenti of all the minerals in the land— these minerals being part of the realty—with the right to enter and search for them and to mine and remove them when found." Brewster v. Lanyon Zinc Co., 140 Fed. 801, 807, 72 C. C. A. 213, 219.

Nor is this all. This lease pledges the property of the corporation to the payment of $60,000, or 10 per cent. of the selling price if that be more, as a condition of its release in case of a sale of the property during its term. The question at issue, therefore, really is whether or not a contract by a mining corporation, which for five years deprives it of the power to produce ore from its property, vests the right to extract all the ore from it in a third party and pledges all its property for the payment of $60,000, or 10 per cent. of its selling price if that be more, as a condition of the release of the contract in case of a sale during the term, constitutes an incumbrance upon the property. At first blush the question seems susceptible of but one answer.

[2] The main argument in support of the proposition that this lease constitutes no incumbrance is the invocation of the rule that words and phrases should be given their familiar and popular sense rather than their forced and subtle or technical significance, and the contention that the popular meaning of incumber and incumbering is mortgage or mortgaging, or pledge or pledging, for the payment of money, and that these words should therefore be limited to that meaning in the interpretation and enforcement of the statute. Baron Pollock said, and his statement will not brook denial, that the term "popular sense," in the rule on which counsel here rely, means "that sense which people conversant with the subject-matter with which the statute is dealing would attribute to it." Grenfell v. Commissioners of Inland Revenue, 1 Exch. Div. 242, 248. There is no class of persons more familiar with titles to property and incumbrances thereon than

the judges whose duty it is frequently to define, enforce, and remove such incumbrances, and their opinions, some of which will be cited below, clearly indicate that people conversant with the subject of this statute would seldom, if ever, limit the meaning of incumber to mortgage or pledge for the payment of money. Answering a like contention as to the popular sense of the word "incumbrance," the Supreme Court of Wisconsin said:

"Webster defines an 'incumbrance' to be 'a burdensome and troublesome load'; and again, 'a burden or charge upon property; a legal claim or lien upon an estate.' It will hardly be claimed that Webster did not define the word for the use of the populace, or that he only intended such definition to include mortgages. Certainly, judgments duly rendered and docketed must be regarded as incumbrances, as used in popular speech." Redmon v. Phœnix Fire Ins. Co., 51 Wis. 292, 8 N. W. 226, 37 Am. Rep. 830.

[3] A decisive canon of construction here, however, is that when a word which has a known legal meaning is used in a statute it must be assumed that the term is used in its legal sense, in the absence of an indication of a contrary intent. The Abbotsford, 98 U. S. 440, 444, 25 L. Ed. 168; McCool v. Smith, 1 Black (U. S.) 459, 464, 470, 17 L. Ed. 218; United States v. Gilmore, 8 Wall. 330, 19 L. Ed. 396. The words "incumber" and "incumbering," when used in reference to property and its title, are words of this character, and the known legal meaning of these words in their popular sense, in the sense that would be attributed to them by conveyancers, lawyers, and judges, the persons most conversant with them, included when this statute was enacted, and still includes, not only mortgages, deeds of trust, and pledges for the payment of money, but every right or interest in the land which may subsist in third persons to the diminution of the value of the land or its title, but consistent with the passing of the fee by the conveyance of the owner. Prescott v. Trueman, 4 Mass. 627, 629, 3 Am. Dec. 246; Fritz v. Pusey, 31 Minn. 368, 369, 18 N. W. 94; Batley v. Foerderer, 162 Pa. 460, 29 Atl. 868, 870. In the case first cited the question arose in the Supreme Judicial Court of Massachusetts in the year 1808, whether or not a paramount right to the title to land which lay dormant in third persons was an incumbrance. Chief Justice Parsons delivered the opinion of the court. He said no authority on either side had been produced, but that upon general principles the court was of opinion that:

"Every right to, or interest in the land granted, to the diminution of the value of the land, but consistent with the passing of the fee of it by the conveyance, must be decreed an incumbrance. * * * Thus a right to an easement of any kind is an incumbrance. So is a mortgage. So also is a claim of dower which may partially defeat the plaintiff's title by taking a freehold in one-third of it."

This declaration of the meaning of these words has been affirmed by the following authorities which illustrate it by the specific decisions attributed to them respectively below: Bouvier's Law Dictionary; 4 Words & Phrases, 3519; 16 Amer. & Eng. Encyc. of Law, 158; Warden v. Sabins, 36 Kan. 165, 169, 12 Pac. 520. An ordinary lease is an incumbrance. Clark v. Fisher, 54 Kan. 403, 406, 38 Pac. 493; Smith v. Davis, 44 Kan. 362, 24 Pac. 428; Grice v. Scarborough, 2

Speers (S. C.) 649, 42 Am. Dec. 391; Batchelder v. Sturgis, 3 Cush. (Mass.) 201. An attachment is an incumbrance. Thatcher v. Valentine, 22 Colo. 201, 206, 208, 209, 43 Pac. 1031; Spangler v. Sanborn, 7 Colo. App. 102, 43 Pac. 905. The lien of a judgment is an incumbrance. Willsie v. Rapid Valley Horse Ranch Co., 7 S. D. 114, 121, 63 N. W. 546. Taxes and municipal claims are incumbrances within the meaning of a court's order of sale subject to incumbrances. In re Gerry (D. C.) 112 Fed. 958, 959. An execution sale subject to redemption is an incumbrance. Post v. Campau, 42 Mich. 94, 3 N. W. 272. A prohibition of the use of land for a brewery or a blacksmith shop is an incumbrance. Van Schaick v. Lese, 31 Misc. Rep. 610, 66 N. Y. Supp. 64, 68; Batley v. Foerderer, 162 Pa. 460, 29 Atl. 868, 870. An easement for a party wall is an incumbrance.

"If the right or interest of the third person is such that the owner of the servient estate has not so complete an ownership and property in his land as he would have had if the right or interest spoken of did not exist, his land is in law diminished in value and incumbered." Mackey v. Harmon, 34 Minn. 168, 24 N. W. 702.

An inchoate right of dower is an incumbrance. Shearer v. Ranger, 22 Pick. (Mass.) 447, 448, 449; Bigelow v. Hubbard, 97 Mass. 195, 198; Jones v. Gardner, 10 Johns. (N. Y.) 266; Porter v. Noyes, 2 Greenl. (Me.) 22, 26, 27, 11 Am. Dec. 30; Russ v. Perry, 49 N. H. 547, 550; Fitts v. Hoitt, 17 N. H. 530; Jenks v. Ward, 4 Metc. (Mass.) 404. A private right of way is an incumbrance. Wilson v. Cochran, 46 Pa. 229, 233; Harlow v. Thomas, 15 Pick. (Mass.) 66, 68; Clark v. Swift, 3 Metc. (Mass.) 390, 392. A right of way for a railroad is an incumbrance. Barlow v. McKinley, 24 Iowa, 69, 70. An attachment is an incumbrance within the meaning of that word in a statute which provides that a certain notice filed with the clerk of the county shall constitute constructive notice to a purchaser or incumbrancer. Batley v. Foerderer, 162 Pa. 466, 29 Atl. 870. A conveyance of timber on land and the right to remove it is an incumbrance. Cathcart v. Bowman, 5 Pa. 317. A reservation of mineral and the right to prospect for and remove it is an incumbrance. Adams v. Henderson, 168 U. S. 573, 574, 580, 18 Sup. Ct. 179, 42 L. Ed. 584; Adams v. Reed, 11 Utah, 480, 40 Pac. 720, 722. A conveyance of all the iron ore and coal on certain lands and the right to remove it is an incumbrance. Stambaugh v. Smith, 23 Ohio St. 584, 591, 592.

Perhaps a sufficient number of authorities has been cited, however, to demonstrate the popular sense and the legal meaning attributed to the words "incumber" and "incumbering" by those conversant with the subjects to which they refer in the statute under consideration. It will be noticed that they are given the same broad and general significance in the construction of an insurance policy (Redmon v. Phœnix Fire Ins. Co., 51 Wis. 292, 8 N. W. 226, 37 Am. Rep. 830), an order of court (In re Gerry [D. C.] 112 Fed. 958, 959), a statute (Batley v. Foerderer, 162 Pa. 466, 29 Atl. 870), and a covenant in a deed (Prescott v. Trueman, 4 Mass. 627, 629, 3 Am. Dec. 246). What then do counsel for the appellees present to establish their contention that

the meaning given to these words by the opinions of the authors and judges which have been cited is subtle, forced, and technical, and that their popular sense is limited to mortgages, or to "putting property in pledge for the payment of money"? They cite two decisions, and two only, which discuss, decide, or define the meaning of these words. Sullivan v. Barry, 46 N. J. Law, 1, 5, wherein the court held that the provision of a statute that "nothing in this act contained shall enable any married woman to execute any conveyance of her real estate, or any instrument incumbering the same, without the husband joining therein," did not prohibit a married woman from making an ordinary lease of her property because she had the right to use it, and putting it to rent was often the only way in which she could do so, and Lockwood v. Middlesex Mutual Assur. Co., 47 Conn. 553, 560, in which a policy of insurance required the insured to disclose fully in the proposals for insurance and to specify in the policy any incumbrances. He had leased the property. The proposals described the property as "to be used and occupied for the usual purposes of such a building by a tenant," and as "occupied as a boarding house." The policy contained these words, "occupancy—tenant," and the court held that the lease was sufficiently specified in the proposals and the policy; that possession by a tenant under an ordinary lease was not referred to by the clause relative to incumbrances; but that a life lease or a lease for 99 years might present a different question. But neither these two sporadic decisions, inspired by the peculiar facts of the cases they determine, nor the earnest argument of counsel, can be permitted to overcome the reason of this case, the consensus of opinion, and the uniform current of authority upon this subject to which reference has been made, and to substitute in the statute before us, for the broad popular sense of the words "incumber" and "incumbering," which these opinions and authorities portray, the limited technical meaning "mortgage" or "pledge" for the payment of money which the necessities of the appellees' case require. In the light of these opinions and decisions there is no rational way of escape from the conclusion that the popular sense, the ordinary significance, and the well-known legal meaning of the words "incumber" and "incumbering," when used with reference to property and its title, included, when this statute was passed, and still include, every right or interest in land which may subsist in third parties to the diminution of the value of the land or its title, but consistent with the passing of the fee by the conveyance of the owner.

The legal presumption is that the Legislature used, and intended to use, these words in this statute in their usual sense at the time the law was passed, unless it clearly appears that they intended to use it in a more restricted or different sense. Corning v. Board of Com'rs, 42 C. C. A. 154, 157, 102 Fed. 57, 60; St. Louis & S. F. R. Co. v. Furry, 52 C. C. A. 518, 526, 114 Fed. 898, 906; In re Gerry (D. C.) 112 Fed. 958, 959. How then does it clearly appear that the Legislature of Colorado intended to use these words in other than their ordinary significance? Counsel answer: Leasing mining property was a common practice when this statute was enacted and was without in-

jurious effects; mortgaging mining property was a common practice at the same time, and it produced evil results; therefore the Legislature used the word "incumber" in the sense of mortgage and the word "incumbering" in the sense of mortgaging. But this case is here for determination on demurrer, and the facts on which this contention is based are neither within our judicial knowledge nor are they pleaded or proved, so that the legal presumption that the Legislature expressed its intention must still prevail.

Counsel contend that mining leases made by corporations without the consent of their stockholders have been before the Supreme Court of Colorado, that no question of their validity on account of the failure of the stockholders to consent has been raised, and they have been held valid. They say that many mining leases have been made by corporations without the consent of their stockholders, and that lawyers, laymen, and officers of corporations in Colorado have assumed that such leases were valid, and that this lease should be so held on account of this contemporaneous construction of the statute. But the facts upon which this argument is based are not admitted by counsel for the appellants, they are not within our judicial cognizance, and they are neither pleaded nor proved in this case. The contention is therefore without foundation and it falls.

They cite the conceded rule that, where words of general import follow specific designations, the application of the general language is controlled by the specific words. Thus a statute provided that the keeper of any hotel or boarding house, or any other person who rents furnished or unfurnished rooms, shall have a lien, and the court held that the lien was given to persons of the same class as keepers of hotels and boarding houses only. Hover v. People, 17 Colo. App. 375, 387, 68 Pac. 679; Gillette v. Peabody, 19 Colo. App. 356, 363, 369, 75 Pac. 18; Cutshaw v. City of Denver, 19 Colo. App. 341, 350, 351, 75 Pac. 22. And they argue that, because in the last clause of section 865 it is declared that any mortgaging or incumbering shall be void, the word "incumbering" should be construed mortgaging, and the word "incumber" in the earlier part of the statute should be construed mortgage. But the rule is inapplicable in this case because the command of the statute that the board of directors "shall not have power to incumber" without the consent of the stockholders, which, without the last clause of the section, itself makes all mortgages and incumbrances so made voidable as to stockholders, contains the general term "incumber" only, and is without specific designations followed by words of general import, and because the interpretation here sought would deprive the words "incumber" and "incumbering" of all force and effect and fly in the face of the familiar canon that "all the words of a statute must have effect rather than that part should perish by construction." United States v. Ninety-Nine Diamonds, 139 Fed. 961, 963, 72 C. C. A. 9, 11 (2 L. R. A. [N. S.] 185); Stevens v. Nave-McCord Merc. Co., 150 Fed. 71, 75, 80 C. C. A. 25, 29.

[4] Finally, counsel contend that the courts of the state of Colorado have decided that section 865 does not withhold from boards of directors of mining companies the power to make mining leases, and

they invite this court to follow that decision. In support of this position they cite Mosher v. Sinnott, 20 Colo. App. 454, 79 Pac. 742; Aliunde Con. Mining Co. v. Arnold, 16 Colo. App. 542, 67 Pac. 28; and Conqueror Gold Mining & Mill. Co. v. Ashton, 39 Colo. 133, 138, 90 Pac. 1124. The case first cited was brought by stockholders of a corporation: (a) To set aside the sales of treasury stock of the corporation by directors to some of their co-directors in payment of debts of the corporation to the latter; and (b) to avoid a mining lease made without the consent of the stockholders. The opinion of the court covers ten printed pages; eight of these are devoted to the sales of the stock and the last two to the lease. The court cites section 585 of Mills' Ann. Statutes, which provides that "the stock, property and concerns of any company organized under the provisions of this act shall be managed by not less than three nor more than nine directors," and the articles of incorporation of the company and holds that under these the board of directors of a mining corporation may make mining leases. Mills' Ann. Stat. of Colorado, from which the court cited the only portion of the statutes of Colorado mentioned in its opinion, was issued in 1891. The provision of section 865 of the Revised Statutes of Colorado 1908, which enacts that boards of directors of mining companies shall have no power to incumber their property without the approving vote of their stockholders, was not enacted until 1895. Hence it was not found in Mills' Ann. Statutes. It is neither mentioned nor referred to in the decision of the court in this Mosher Case, and this court is confident that it was not called to the attention of, considered, or interpreted by, that court. The question it would' have presented was too serious to have been determined without reference to the statute which conditioned its decision. Moreover, if it did decide it, its decision is not an authoritative declaration of the law of the state of Colorado, and, while it is entitled to such respectful consideration as the arguments it presented invoke, it does not control the federal courts in the determination of the question at issue because it is not the decision of the highest judicial tribunal of the state. It is the decision of the highest judicial tribunal of a state interpreting the statutes of that state, and those only, that the federal courts consider themselves bound to adopt and follow. Freund v. Yaegerman (C. C.) 27 Fed. 248; Federal Lead Co. v. Swyers, 161 Fed. 687, 88 C. C. A. 547. And as the opinion in this Mosher Case does not refer to the provisions of the statute under consideration and contains neither argument nor reason for the construction of them which counsel for the appellees contend it sustains, it is not more persuasive than it is binding.

In the other two cases cited no question regarding the power of the boards of directors or officers of a corporation to make mining leases without the approving vote of the stockholders was raised, considered, or decided. In each of them the legal question was the extent of the authority of an agent to make or to modify a lease, and, while in the discussion of that question the general statement that the power to manage the affairs of the corporation and to make leases is lodged in the board of directors may be found in the opinions, that statement

was clearly made without thought of the power of the stockholders over incumbrances, or the restriction upon the power of the board of directors contained in the statute it is our duty to interpret. The result is that there is nothing in those decisions of the courts of Colorado that is either decisive or persuasive that the provisions of this statute do not withhold from boards of directors of mining companies the power to make mining leases without the approving vote of the stockholders, and the sum of the whole matter is here.

The Legislature by section 865 made a law that the board of directors of a mining corporation should not have the power to incumber the mines, plant, or the principal machinery of its corporation incident to the production from such mines, without the approving vote of the holders of a majority of its stock, and that any such mortgaging or incumbering without such approving vote should be void. When this statute was enacted, the popular sense, the ordinary significance, and the known legal meaning of the words "incumber" and "incumbering," when used with reference to property or its title, included every right or interest in land which may subsist in third persons to the diminution of the value of the land, or its title, but consistent with the passing of the fee by the conveyance of the owner. If the right or interest of the third person is such that the owner of the servient estate has not so complete an ownership and property in his land as he would have had if the right or interest spoken of did not exist, his land is in law diminished in value and incumbered. The board of directors of this corporation, without the approving vote of its stockholders, made a mining lease for five years of the mines, plant, and principal machinery of this corporation, whereby, for the promise of certain royalties, they caused the corporation to convey to the lessee the possession and occupation thereof and the right to remove all the ore therefrom, and pledged the property for the payment of $60,000 or 10 per cent. of the selling price if that was more, for the privilege of selling its property free from the lease during the last four years of its term.

That this lease diminished the value of the land of the corporation is not debatable. It took from the corporation the right of possession and occupation of the property for five years and thereby deprived it of a possession and occupation it would otherwise have had. It took from the corporation the right to produce ore from the property for five years, and, forever, if the lessee extracted all the ore during the term. It subjected the land to a pledge of the payment of $60,000, or 10 per cent. of the selling price, if that was more, as a condition of passing and conveying a title free from the lease within its term, an incumbrance as effectual within the five years and of the same nature as a mortgage for that amount would have been. For the title could be conveyed subject to either, but it could be conveyed within the five years free from neither without a payment of the $60,000 or more.

And the conclusion is that this mining lease constituted an incumbrance upon the property of the corporation and that it was voidable at the suit of its stockholders because, as against them, its execution without their approving vote was beyond the powers of the board of directors and of the corporation.

Counsel for the appellees maintain, however, that although the mining lease was voidable by the stockholders, because it was made without their approving vote, they cannot maintain this suit because they have not complied with rule 94 in equity. That rule requires every bill by one or more stockholders in a corporation against the corporation and others "founded on rights which may properly be asserted by the corporation" to contain an averment that the suit is not a collusive one to confer on a court of the United States jurisdiction of a cause of which it would not otherwise have cognizance, and other allegations, none of which are found in the bill in this case. The answer of counsel for appellants is that this bill is not founded on rights which may properly be asserted by the corporation, but upon rights which the stockholders alone can enforce, and hence that it does not fall under the rule. The court below was of that opinion, and the next question is: Is the right of action to avoid a lease or conveyance by a corporation without the indispensable approval of its stockholders in the corporation or in the stockholders?

[5] The statutes of Colorado granted to the board of directors of this corporation the general power to manage its affairs, to incumber its property by mining leases, or otherwise, but provided that it should not have this power to incumber its property unless its exercise was approved by a vote of the stockholders, and declared that any incumbering without such a vote should be absolutely void. Courts take judicial cognizance of the fact that Legislatures use the word "void" in statutes in the sense of utterly void so as to be incapable of ratification, and in the sense of voidable by those alone whose rights are infringed without express discrimination, so that resort must be had to settled rules for the interpretation of statutes in each case to determine in which sense the Legislature intended to use it. One of these rules is that an act declared to be void by statute which is malum in se or against public policy is utterly void and incapable of ratification, but an act or contract so declared void, which is neither wrong in itself nor against public policy, but which has been declared void for the protection or benefit of a certain party, or class of parties, is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries. A conveyance in fraud of creditors was declared to be "utterly void, frustrate, and of none effect," by the statute of 13 Eliz. c. 5, and has been uniformly declared to be void by the statutes of the states. But such a conveyance is universally held to be voidable only, to be valid until avoided, to be voidable by the creditors alone, and to be capable of ratification by them. Bacon's Abridgement, Title, Void and Voidable; Anderson v. Roberts, 18 Johns. (N. Y.) 516, 527, 9 Am. Dec. 235; Harvey v. Varney, 98 Mass. 118, 120; Drinkwater v. Drinkwater, 4 Mass. 354; Oriental Bank v. Haskins, 3 Metc. (Mass.) 332, 37 Am. Dec. 140; Crowninshield v. Kittridge, 7 Metc. (Mass.) 520. A gift of goods declared by statute to be void as to creditors is voidable only, may be avoided by them alone, and is susceptible to ratification. Snow v. Lang, 2 Allen (Mass.) 18. And a preference of a creditor within 60 days of insolvency declared to be void as to creditors by statute is voidable only,

is capable of ratification by the creditors, is valid until avoided by them, and may be avoided by them alone. Colt v. Sears Commercial Co., 20 R. I. 64, 37 Atl. 311, 314.

[6] Another principle of law so firmly established as to be no longer debatable is that an act or contract of a corporation which is beyond the scope of its corporate powers, an act that it cannot lawfully do in any way or manner under any circumstances, is incapable of ratification by estoppel or otherwise, and the corporation itself may challenge it. But an act or contract of a corporation which is within its general corporate powers, which is neither wrong in itself nor against public policy, but which is defective from a failure to observe in its execution a requirement of law enacted for the benefit or protection of a third party or parties, is voidable only. Such an act or contract is valid until avoided, not void until validated, and it is subject to ratification and estoppel. Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24, 60, 11 Sup. Ct. 478, 35 L. Ed. 55; Campbell v. Argenta Gold & Silver Min. Co. (C. C.) 51 Fed. 1, 8; Zabriskie v. Cleveland, C. & C. R. R. Co., 64 U. S. (23 How.) 381, 398, 16 L. Ed. 488; St. Louis, V. & T. H. R. R. Co. v. Terre Haute & I. R. R. Co., 145 U. S. 393, 402, 408, 12 Sup. Ct. 953, 36 L. Ed. 748; Boston & M. Consol. C. & S. Min. Co. v. Montana Ore-Purchasing Co. (C. C.) 89 Fed. 529, 530; Miners' Ditch Co. v. Zellerbach, 37 Cal. 543, 578, 99 Am. Dec. 300; Bishop & Co. v. Kent & Stanley Co., 20 R. I. 680, 684, 41 Atl. 255; Beecher v. Rolling Mill Co., 45 Mich. 103, 105, 108, 109, 7 N. W. 695; Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921, 928, 929, 932; State v. Richmond, 26 N. H. 232; Rochester Savings Bank v. Averell, 96 N. Y. 467, 471, 475; Paulding v. Steel Co., 94 N. Y. 334, 341; Boyce v. Montauk Gas Coal Co., 37 W. Va. 73, 85, 16 S. E. 501; Watts' App., 78 Pa. 370, 394; Manhattan Hardware Co. v. Phalen, 128 Pa. 110, 118, 18 Atl. 428; Thomas v. Citizens' Horse Ry. Co., 104 Ill. 462, 467.

In St. Louis, Vandalia & Terre Haute R. R. Co. v. Terre Haute & I. R. R. Co., 145 U. S. 393, 403, 12 Sup. Ct. 953, 956 (36 L. Ed. 748), the Supreme Court said, of a statute of Illinois which declared a lease without the consent of the stockholders void:

"Although this statute, in terms, declares that any such lease, made without the written consent of the Illinois stockholders, 'shall be null and void,' it would seem to have been enacted for the protection of such stockholders alone, and intended to be availed of by them only. It did not limit the scope of the powers conferred upon the corporation by law, an excess of which could not be ratified or be made good by estoppel; but only prescribed regulations as to the manner of exercising corporate powers, compliance with which the stockholders might waive, or the corporation might be estopped, by lapse of time, or otherwise, to deny."

The mining lease under consideration falls within this principle. It is evident that the incumbering of the property of the corporation was not malum in se, that it was not against public policy, and that the provision of the statute which withheld from the board of directors the power to incumber, without the approving vote of the stockholders, was enacted for their sole benefit, for the single purpose of preventing the corporation and the board from depriving them of the

use and production of the property by the corporation itself without their consent. The lease, therefore, is voidable, not void. It is valid until avoided, not void until validated, and it is capable of ratification by estoppel.

[7] But a corporation which has executed and accepted the benefits of a contract within the scope of its powers, that is neither wrong in itself nor against public policy, and that is defective only because in its execution the corporation has failed to comply with some legal requirement enacted for the sole benefit of third persons, is estopped to assail it, and the beneficiaries of the requirement alone may avoid it. Hence the stockholders of this corporation, and they alone, have the right to avoid this lease because they alone had any interest in a compliance with the legal requirement that they should assent to its execution. Hervey v. Midland Ry. Co. (C. C.) 28 Fed. 169, 174; In re New York Economical Printing Co., 110 Fed. 514, 519, 49 C. C. A. 133; Rogers v. Nashville, C. & St. L. Ry. Co., 91 Fed. 299, 304, 307, 314, 315, 316, 33 C. C. A. 517; Beecher v. Rolling Mill Co., 45 Mich. 103, 108, 109, 7 N. W. 695; Boyce v. Montauk Gas Coal Co., 37 W. Va. 73, 85, 16 S. E. 501; Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921, 928, 929, 930; Campbell v. Argenta Gold & Sil. Min. Co. (C. C.) 51 Fed. 1, 8; Wood v. Waterworks Co. (C. C.) 44 Fed. 146, 150, 12 L. R. A. 168; St. Louis, etc., R. R. Co. v. Terre Haute & I. R. R. Co., 145 U. S. 393, 402, 408, 12 Sup. Ct. 953, 36 L. Ed. 748; Antietam Paper Co. v. Chronicle Publishing Co., 115 N. C. 143, 145, 20 S. E. 366; Alabama Iron & Steel Co. v. McKeever, 112 Ala. 134, 145, 20 South. 84; Bishop & Co. v. Kent & Stanley Co., 20 R. I. 680, 684, 686, 41 Atl. 255; McKee v. Title Ins. Co., 159 Cal. 206, 113 Pac. 140; Nelson v. Hubbard, 96 Ala. 238, 11 South. 428, 433, 17 L. R. A. 375; Barrett v. Pollak Co., 108 Ala. 390, 18 South. 615, 620, 54 Am. St. Rep. 172; Jones on Real Property, § 153; 2 Beach on Private Corporations, p. 1165, § 744.

In Hervey v. Illinois Midland Ry. Co. (C. C.) 28 Fed. 169, 174, Mr. Justice Harlan, in 1884, held that a provision of statute which made the assent of a given number of stockholders essential to the validity of a mortgage was primarily for the benefit of the stockholders of a corporation and that its creditors were estopped from assailing it on the ground that no such assent to its execution had been given.

In Beecher v. Marquette & Pac. Rolling Mill Co., 45 Mich. 103, 109, 7 N. W. 695, 697, a suit was brought to foreclose a mortgage made by the corporation, and Parks, the grantee of the equity of redemption, defended on the ground that the stockholders had not authorized the mortgage as required by a statute of Michigan which declared that no mortgage of any of the mines, works, real estate, or franchises of a corporation should "have any force or effect" unless authorized by the vote of three-fifths in interest of the stock of the company at a meeting called as directed by the statute. Judge Cooley delivered the opinion of the Supreme Court of Michigan to the effect that the mortgagor, the grantee from it, and all others claiming un-

der it, were estopped from avoiding the mortgage upon that ground. He said, among other things: .

"In this case the stockholders acted deliberately in sanctioning the giving of the mortgage, and they now make no complaint. The bonds and mortgage were given, and have. been acted upon. Complainant has loaned money in reliance upon them. Interest has fallen due and he has filed his bill to foreclose, and neither the corporation nor any of its stockholders has seen fit to make defense. The corporators may possibly have had a right to take advantage of the exact words of the statute, repudiate their action, and treat the mortgage as of no force or effect; but they had an equal right to treat it as effective and valid. They have chosen the latter course, and this is conclusive upon the corporation and upon any one claiming under it. What would have been the result had no corporate meeting ever been held we do not consider."

In re New York Economical Printing Co., 110 Fed. 514, 519, 49 C. C. A. 133, 138, a trustee in bankruptcy of the property of a corporation attempted to defend his title against a mortgage made by the corporation without the consent of the stockholders required by a statute, and the United States Circuit Court of Appeals said:

"We have not overlooked the point made by the trustee that the mortgage was invalid because the consents of the stockholders of the mortgagor had not been filed in the office of the proper official, as required by the provisions of the stock corporation law. These provisions are for the protection of stockholders, and only stockholders can take advantage of any defects in complying with them. Bank v. Averell, 96 N. Y. 467, 475; Paulding v. Steel Co., 94 N. Y. 334."

In Eastman v. Parkinson, 133 Wis. 375, 381, 113 N. W. 649, 652, 13 L. R. A. (N. S.) 921, 928, a trustee in bankruptcy of the mortgagor, a corporation, attacked a mortgage of its property because it was made by the corporation without the assent of the stockholders which a statute declared requisite to its validity. Judge Marshall, delivering the unanimous opinion of the Supreme Court of Wisconsin, said:

"Such statutes as the one under consideration, by the great weight of authority, are regarded as having been enacted for the protection of stockholders. Neither the corporation nor any one representing it, nor its creditors, can efficiently invoke the statute against an executed contract."

There were early decisions in California which, failing to note the distinction between contracts of corporations beyond the scope of their general powers and contracts within that scope made without compliance with some formality or requisite of their execution, held that deeds of corporations without the indispensable assent of their stockholders were void, and that the corporation itself, its creditors, or any one claiming under it, could be heard to defeat them upon that ground. McShane v. Carter, 80 Cal. 310, 22 Pac. 178; Pekin Mining, etc., Co. v. Kennedy, 81 Cal. 356, 22 Pac. 679. But the error in these decisions was disclosed by the opinion of Judge Knowles to the contrary in Campbell v. Argenta Gold & Silver Min. Co. (C. C.) 51 Fed. 1, 8, and was corrected by the. Supreme Court of California in the late case of McKee v. Title Ins. & Trust Co., 159 Cal. 206, 222, 223, 113 Pac. 140, 146, 147. In that case an assignee in insolvency brought a suit to avoid bonds to the amount of $275,000, and to reduce the mortgage securing them by that amount, on the ground, among others,

that the statute declared that one of the conditions on which the corporation could create or increase its indebtedness was that the creation or increase should be assented to by two-thirds of the stockholders, and that the increase of indebtedness evidenced by these bonds had never been assented to or authorized by them. Judge Shaw, delivering the opinion of that court, said:

"The assignee in insolvency represents the interest of the creditors only. He is not suing on behalf of the stockholders, or in their interest, and, there being no fraud, he stands in the shoes of the corporation with regard to the bonds. * * * The following cases declare that neither the corporation nor its creditors can, under like circumstances to those here existing and under similar provisions of the law, maintain such an attack on bonds irregularly issued, and that the provisions of such laws are for the protection of stockholders only."

He then dismissed the contention of the assignee upon that ground and cited some of the authorities mentioned above in support of the decision.

Indeed, so firmly established has this principle become that the authors of text-books declare it to be the law of the land. Jones, in volume 1 of his work on "The Law of Real Property in Conveyancing," says, at section 153:

"A mortgage by a corporation made without the assent or vote of a certain portion of its stockholders, as required by the statute, can be attacked only by the corporators. Objection to its validity cannot be made by the corporation itself in defense of a suit to foreclose the mortgage. Such a provision is for the protection of the stockholders, and they alone are wronged by the execution of a mortgage in violation of the statute, and they alone can raise the question of the validity of the mortgage."

And Beach, in his work on Private Corporations, at section 744, declares that:

"The corporators, and no one else, can raise objections to proceedings under acts restricting the power of the directors to mortgage."

Such is the weight of reason and authority in support of the position that the stockholders alone had the right, and that the corporation was without right, to maintain a suit to avoid this lease on the ground that it was made without the approving vote of its stockholders.

No well reasoned and considered opinion to the contrary comes to our attention. Counsel rely upon Carlsbad Water Co. v. New, 33 Colo. 389, 81 Pac. 34; Southern Building & Loan Ass'n v. Casa Grande Stable Co., 128 Ala. 624, 29 South. 654; Hutton v. Bancroft & Sons Co. (C. C.) 83 Fed. 17, 18; Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 570, 574, 19 Sup. Ct. 817, 43 L. Ed. 1081; Louisville Trust Co. v. Louisville, etc., Ry. Co., 75 Fed. 433, 22 C. C. A. 378. And they cite a number of other cases which in no way involved any limitation of the powers of a corporation for the benefit or protection of stockholders, which have nevertheless been carefully read, but which are too irrelevant for review.

In Carlsbad Water Co. v. New, 33 Colo. 389, 81 Pac. 34, a manufacturing corporation had made a mortgage upon its principal machinery without the approving vote of its stockholders, and had been

adjudged a bankrupt. A suit had been brought to foreclose the mortgage, and the trustee in bankruptcy was defending it on the ground that the stockholders never had assented to its execution. All that the Supreme Court of Colorado said upon the question whether the right to attack the mortgage was in the corporation and its assigns, or in the stockholders, was in these words:

"It was competent for appellant trustee to question the validity of the mortgage. In re Antigo Screen Door Co., 123 Fed. 249, 254 [59 C. C. A. 248]; McShane v. Carter, 80 Cal. 310, 312 [22 Pac. 178]; Pekin Mining, etc., Co. v. Kennedy, 81 Cal. 356 [22 Pac. 679]."

In the case In re Antigo Screen Door Co., the question whether or not a corporation, its creditors or assigns, had the right to question the validity of an incumbrance for its lack of the requisite assent of stockholders, was neither presented nor considered. The question there was whether or not a trustee in bankruptcy could assail a chattel mortgage which was fraudulent as to creditors, and the court held that he could. The two California cases have been overruled, as has been heretofore shown, by the decision of the Supreme Court of that state in McKee v. Title Ins. Co., 159 Cal. 206, 113 Pac. 140, 147, and of the federal court in that circuit in Campbell v. Argenta Gold & Silver Min. Co. (C. C.) 51 Fed. 1, 8, for the cogent reason that the court in those cases failed to note and give effect to the decisive difference between a contract beyond the scope of the general powers of a corporation and a contract within that scope made in disregard of a requirement regarding its execution made for the benefit or protection of stockholders, or other third persons. Thus it appears that the opinion in the Colorado case presents neither argument nor authority to sustain the decision of this question which it contains.

In Southern Building & Loan Ass'n v. Casa Grande Stable Co., 128 Ala. 624, 29 South. 654, a mortgagor corporation brought a suit to avoid its mortgage: (a) Because it was usurious; (b) because it was given to secure payment for stock of another corporation for which it had no power to subscribe; and (c) because it was made without the requisite assent of the stockholders. The court held that the corporation was estopped from avoiding the mortgage until it paid the amount owing upon it. The question whether it or its stockholders alone had the right to avoid the mortgage for the lack of the latters' assent was neither presented, considered, nor decided. If it had been, the Supreme Court of Alabama undoubtedly would have decided, as it had repeatedly done before, that the stockholders alone had that right. Alabama Iron & Steel Co. v. McKeever, 112 Ala. 134, 145, 20 South. 84; Barrett v. Pollak Co., 108 Ala. 390, 18 South. 615, 620.

In Hutton v. Bancroft & Sons Co. (C. C.) 83 Fed. 17, 18, a stockholder brought a suit against his corporation and one Bloede to cancel stock issued to the latter on the grounds: (a) That Bloede obtained the stock by fraud; and (b) that its issue was beyond the powers of the corporation, violative of the statutes of Delaware and of the rights of the complainant as a stockholder. The court held that the stockholder could not maintain the suit without first applying to his corporation for a remedy for his wrongs. But it expressly declared

that this conclusion was not based upon the failure to comply with rule 94 in equity, and the report of the case fails to disclose any statutory or other legal restriction upon the powers of the corporation for the protection or benefit of the stockholders upon which the complainant was counting in that case, or any consideration or decision of the question now in hand.

In the suit between the Louisville, New Albany & Chicago Railroad Company and the Louisville Trust Company and others, reported in 75 Fed. 433, 22 C. C. A. 378, and 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081, the New Albany Company prayed a cancellation of its guaranty of certain bonds: (a) Because the guaranty was made fraudulently by a minority of its directors; (b) because no quorum of its directors was present at the meeting which directed the guaranty to be executed; and (c) because the guaranty was made without the requisite petition of a majority of its stockholders. It was held that as against innocent purchasers of the bonds the New Albany Company was estopped from avoiding its guaranty, but that as against those who took the bonds with notice of the defect in the execution of the guaranty it should be canceled. But the record of that case has been searched in vain for any objection, or any ruling upon any objection, to the maintenance of the suit by the corporation on the ground that the stockholders had not assented to the guaranty. No claim appears to have been made that the stockholders alone had the right, and the corporation had no right, to maintain the suit upon that ground. The opinions do not mention the question now under consideration, and it is certain that it was not in the minds of the courts in this case and was not determined by them.

The result is that, laying aside the overruled California cases, but one opinion, the opinion in Carlsbad Water Co. v. New, 33 Colo. 389, 81 Pac. 34, in which the question here at issue was presented, considered, and decided, has come to our attention in which it has been held that a corporation has the right to challenge its otherwise valid contract on the ground that it was made without the required assent of its stockholders. That decision is fortified by no argument or reason and by no authorities that have not been overruled. It is the decision of a state court upon a question of practice in a suit in equity, it is not binding upon the federal courts, and in the light of the overwhelming weight of reason, the consensus of opinion, and the current of authority to the contrary, to which attention has been called, it cannot be permitted to prevail.

[8] An act or contract of a corporation otherwise within its powers and valid, but defective on account of the failure of the corporation to comply with some requirement of statute or of law enacted for the sole benefit or protection of third parties, is assailable by the beneficiaries alone. It may not be successfully attacked by the corporation. The Black Bear Mining Company had no right to avoid this mining lease on the ground that it never received the approving vote of its stockholders. That right was in the stockholders alone, and there was no defect in the bill because the complainant failed to insert in it the allegations required by rule 94 in equity.

[10] There are minor objections to the bill. Counsel say that it contains averments that the lease was executed by the president and secretary of the corporation without authority from the board of directors, and that the complaining stockholders cannot maintain their suit because the statute withholds power to make it without their consent from the board of directors alone. This construction of the statute is too narrow and technical to be sound. The statute grants the power to make the lease to the board of directors alone and then conditions their exercise of this power with the approving vote of the stockholders, and its legal effect is to condition the power of the agents of the board in this matter, the president and secretary of the corporation, with the same limitation. They contend that the stockholders cannot maintain this suit to avoid the lease for the lack of their assent because the bill shows that the lease was executed without the assent of the board of directors and that it is for that reason void as to the corporation. But if this view of the averments of the bill were correct, the right to disregard or avoid the lease on this ground would be in the corporation and not in the stockholders, and the fact that the corporation had such a right on another ground would neither diminish nor destroy the right and cause of action of the stockholders to avoid the lease on the ground that it was made in violation of the provision of the statute enacted for their benefit and protection.

[11] Counsel maintain that it appears on the face of the bill that, at the annual meeting of the stockholders succeeding the execution of the lease, they voted to reject and repudiate it, that from this fact the inference may be drawn that the repudiators thereafter controlled the corporation and its officers, and that on this ground the complainants may not maintain their suit. It does not follow, however, from the repudiation of the lease by the stockholders that the complainants control the corporation, and, if they do, that fact neither diminishes nor destroys their cause of action founded on the violation of the statute enacted for their benefit because the corporation cannot sustain that cause of action and the stockholders alone can maintain it.

[9] Counsel argue that the complainants had an adequate remedy at law by a suit in ejectment in the name of the corporation, that there is no equity in the bill because it failed to show that the lease will cause irreparable injury to the stockholders, and that their suit is barred by laches because it was not brought until nine months after the execution of the lease.

But: (1) The corporation has no right to eject the lessee on the ground that the stockholders did not assent to the lease, and, although the corporation may maintain such an action on other grounds, the stockholders still have their right to relief in equity on this ground. (2) The lease is not void on its face. It is voidable by the stockholders by reason of facts it does not disclose, and it is therefore a cloud upon the title of the corporation. It not only clouds that title, but it deprives the corporation of the possession of its property and of the right to produce ore therefrom; it is in violation of a statute enacted to protect the complainants in their right to have the title, possession, and right of production of ore free of incumbrance in their corpora-

tion. And there is a legal presumption that any cloud or unlawful incumbrance upon real property inflicts such an injury upon parties interested therein who have the right to have it free thereof as will give a court of equity jurisdiction to remove it at their suit without proof of other damage. Schofield v. Ute Coal & Coke Co., 92 Fed. 269, 271, 34 C. C. A. 334, 336; Ormsby v. Ottman, 85 Fed. 492, 493, 29 C. C. A. 295, 296.

[12] (3) Under ordinary circumstances a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14, 21; Boynton v. Haggart, 120 Fed. 819, 830, 57 C. C. A. 301, 312. The bill discloses no unusual facts or circumstances tending to estop the complainants from bringing their suit within the time fixed by such a statute. On the other hand, it negatives the existence of such facts, for it contains averments that the lessee and his grantee, the Black Bear Mining Company, had notice that the stockholders had not assented to this lease before they respectively acquired any interest therein. This suit was brought within the time fixed by the analogous statute of limitations (section 4071, Revised Statutes of Colorado 1908), and the bill does not show that it is barred by laches.

All the objections to the complainants' pleading have now been considered and found to be untenable. In their consideration it has been conceded that the inference might be drawn from the bill that the lease was void as against the corporation because not authorized by the board of directors. This concession has been made to show that the bill states a good cause of action in equity notwithstanding, but it is neither decided nor admitted that this is the true construction or effect of the allegations of the pleading. The decree must be reversed, and the case must be remanded to the court below, with instructions to overrule the demurrer, to permit the defendants to answer, and to take further proceedings not inconsistent with the views expressed in this opinion.

It is so ordered.